## Louisville Railway Co. v. Kellner-Dehler Realty Co.

(Decided June 6, 1912.)

### Appeal From Jefferson Circuit Court (Chancery Branch, First Division).

Specific Performance—Decree for Does Not Go as Matter of Course —May Be Granted or Withheld as Equity Demands.—A decree for the specific performance of a contract for the sale of real estate does not go as a matter of course, but is granted or withheld accordingly as equity and justice seem to demand in view of all of the circumstances in the case. As appellant did not injure any one by its refusal to take the lots, and as is was deceived, though unintentionally, in contracting for the lots, a court of equity should not enforce the contract.

CLARENCE DALLAM for appellant.

AARON KOHN, T. W. SPINDLE, STANLEY E. SLOSS and KOHN, BINGHAM, SLOSS & SPINDLE for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

The parties to this appeal each own a survey of about ten acres of land in the southwestern part of the city of Louisville, near the city limits. Both are bounded on the north by Broadway, and appellee's property extends back for about five blocks to Garland Avenue and has a frontage of about 487 feet on Broadway. These two surveys are adjacent to each other, and at a point on Broadway near the division line, a railway track enters the land of appellee and extends into it

about twenty-five feet. This track and others in that vicinity, at one time belonged to the Kentucky & Indiana Bridge & Railroad Co., but now appear to be owned by appellant, but this twenty-five feet is on the property of appellee, and appellant desired to purchase a small portion of appellee's property at this point, but seems to have kept the matter a profound secret. About the first of 1910, appellee, with the view of bringing its property, or a part of it into the city of Louisville, made a plat of its property from Broadway to Garland Avenue, five blocks, and placed the plat on a blue print. This blue print did not show, however, that a part of the survey was not platted and was omitted therefrom. Appellant's agent was shown this plat and he supposed it contained all of appellee's survey and, therefore, concluded that lots nine and ten on the plat were situated adjacent to appellant's ten acres and were the ones upon which the railroad track was located. This blue print failed to show a triangular piece of land owned by appellee 170 feet wide on Broadway and extending back to Garland Avenue where it was about nine feet wide, and lying between that portion of appellee's property platted and the ten acres owned by appellant. Appellant was shown the blue print and conceived that lots nine and ten covered the property which it desired to purchase. Appellant engaged the Commercial Bank & Trust Co., to make the purchase for it, and Caldwell Norton, who attended to that department of the bank's business, took the matter up with Mr. Dehler, the representative of Kellner-Dehler Realty Co., and, at the request of Mr. Norton, Mr. Dehler promised to see those interested in the company and ascertained the prices of the lots and report to him. In a short time afterwards, Dehler addressed to Mr. Norton the following communication:

"April 11, 1910.

"I took up the matter about the sale of lots 9 and 10 on the south side of Broadway below 28th street and the price per foot is $40.00 net.

"If you make a proposition please make it direct to the Kellner-Dehler Realty Company. The price as given you will be maintained all the way through.

"Please let me hear from you at your earliest convenience. Any building placed on these lots must set back as far as 20 feet from the property line on Broadway."

In a short time after the receipt of the above, Mr. Norton, for the Commercial Bank & Trust Company, sent appellee the following acceptance of the proposition:

"April 13, 1910.

"My client accepted your proposition dated April 11, 1910, taking lots 10 and 9 facing Broadway, with the understanding that no building should be erected near- er than 20 feet from the property line on Broadway."

It appears that a Mr. Paslick, representing appellee, and Mr. Norton prepared an acceptance of the proposi- tion from appellee in Mr. Norton's office in the bank building; that Mr. Norton in the presence of Mr. Pas- lick dictated a description of the lots he was buying, and that this, as testified to by Mr. Norton, then oc- curred:

"It was my understanding, and I wanted it in the proposition, and started to dictate it in the proposition describing the switch, and he objected and said, 'Why, we understand about the switch.' Now, after getting the price on the property on 28th Street and on Broad- way, why I told him why I wanted those two lots and described them, that I was buying them adjoining the Louisville City Railway Company to get the switch," &c.

Mr. Paslick says in his testimony that on the day before this conversaton at Norton's office as stated by him, Norton came to his office and said to him:

" 'Paslick,' he says, 'you and I are both real estate agents, and between real estate agents you don't have to tell Dehler who the purchaser is.' He then told me who it was and not to tell Col. Dehler who the purchaser was, so I didn't say a word and he told me it was the Louisville Railway Company. I didn't say a word about that—didn't answer. The next day I went up to his office, and he then wrote out the acceptance of the proposal. He dictated that to a young lady stenog- rapher, I don't know her name, and whilst he was dictating he went on stating something about a switch crossing Broadway. I spoke to him and said, 'That switch has nothing to do with those lots.' He says, 'are they going to tear up the switch?' I says 'I don't know a thing about that,' and then he said something to the young lady and she scratched it out. He completed the acceptance of the proposition and I then took that up to Col. Dehler."

The petition alleged that appellee caused the Realty Company to prepare a deed for the sale of lots nine and ten in accordance with the proposal and acceptance above copied, which was tendered, and both the Bank & Trust Company and appellant refused to receive it and pay for the lots, and this action was brought to enforce a specific performance of the contract.

There is no evidence showing that appellee knew that appellant was the real purchaser of the property, nor that it knew for whom the Bank & Trust Company and Norton were acting as agents in the purchase of the property. There is no contention that the lots were not worth the amount agreed on, and there is nothing in the record showing that they were of less value on the date the deed was tendered or at this time. The reasons that appellant refused to take the lots are, first, it never intended to buy them as it has no use for them, as they were not adjacent to the ten acres it already owned and did not have the railroad switch on them as it thought; second, it was deceived and made to believe that he lots were adjacent to its property and were the ones upon which the track was located, by reason of the incompleteness of the blue print referred to. There is nothing in the record to show that there was any intention to deceive appellant or any one with the blue print plat. There was considerable evidence offered to show that the realty company, or its representative, had knowledge or information before the purchase of the property by Norton was completed, that appellant was the real party in interest, and that by concealing the fact that lots nine and ten did not adjoin its property and that appellant was not buying the property it thought it was, the realty company was guilty of actual fraud. Therefore, appellant could not be forced to accept this deed and . pay for the property. But waiving this question, we are of the opinion that it was actually deceived by the blue print referred to. It was not told by appellee to any one that this blue print map did not cover all its property in this small survey. It was not required to do this, however, but the plat was calculated to deceive one who looked at it without this knowledge.

A decree for the specific performance of a contract for the sale of real estate does not go as a matter of course, but is granted or withheld accordingly as equity and justice seem to demand in view of all the circum-

stances in the case. In the case of Bluegrass Realty
Co. v. Shelton, &c., the opinion in which was delivered
May 31, 1912, the court said:

"In Story's Equity, section 750, the author says:
'Indeed, the proposition may be more generally stated
that courts of equity will not interfere to decree a spe-
cific performance except in cases where it would be
strictly equitable to make such a decree.' In Woolums
v. Horsely, 93 Ky., 582, it was said that a specific exe-
cution was not a matter of absolute right in a party, but
of sound discretion of the court; that a hard or uncon-
scionable bargain would not be specifically enforced,
nor if the decree would produce injustice or under the
circumstances be inequitable; that a court of equity
would allow a defendant to resist a decree where the
plaintiff might not be allowed relief upon the same evi-
dence; and that a contract ought not to be carried into
a specific performance unless it should be just and fair
in all respects."

Appellee has not been injured; its property is worth
the amount which it claims it sold to appellant for. Ap-
pellant has no use for the property, as it is not adja-
cent to the property it owns and is not the property
upon which the railroad switch is located. It could not
use it in the business authorized by its charter, and
therefore, could not hold it for more than five years.
It is evident that appellant was under the belief that
lots nine and ten adjoined its property which would en-
able it to use them in their business. Appellant did
not injure any one by its refusal to complete the trans-
action and pay for the lots, and as it was deceived,
though unintentionally, in contracting for the lots, a
court of equity should not enforce the contract.

For these reasons the judgment of the lower court is
reversed and the case remanded with directions to the
lower court to dismiss the petition.