## McGowan v. Shearer.

(Decided June 12, 1917.)

Appeal from Wayne Circuit Court.

1. Contracts—Meeting of Minds of Parties—Specific Performance.—Negotiations do not rise to the status of a contract unless the minds of the negotiating parties meet upon the same thing, and where the negotiations relate to a sale of real property to be bounded by a line agreed upon and the prospective vendor designates one line as a dividing one and the proposed vendee suggests another, and each of the parties understand that the line proposed by them is the true one and each of said lines is materially different, the minds of the parties failed to meet as to the subject matter of the contract, and neither of them can maintain an action to enforce specific performance against the other.

J. P. HARRISON, J. BERTRAM & SON, WM. WADDLE and VIRGIL P. SMITH for appellant.

DUNCAN & BELL and J. P. HOBSON & SON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This suit was brought by appellee (plaintiff) against the appellant (defendant) to enforce specific performance of what the plaintiff claims to be a valid executory contract made by him with defendant whereby she agreed to convey to him a tract of land located in Wayne county and containing 100 acres, more or less.

A demurrer was filed to the petition, which was overruled, followed by answer which denied the contract and further pleaded that the negotiations which were had between the parties, and which are claimed to constitute the contract, required plaintiff to perform certain conditions precedent "at once," and that he had failed in these particulars and for that reason the alleged contract should not be enforced, although it might be held that the negotiations were sufficient in law to constitute a valid enforcible contract for the sale of the land.

Proof was taken, and upon submission judgment was rendered enforcing the contract, not as plaintiff claimed, but as defendant intended by the language she used in her letters forming the contract, if any, and as interpreted by the court.

From the judgment requiring her to convey to plaintiff any land the defendant prosecutes this appeal, and plaintiff has obtained a cross-appeal, insisting that defendant should have been required to convey to him all the land which he understood from the correspondence he was purchasing.

The parties did not meet at any time during the negotiations, which were carried on entirely by correspondence, and the contract for the sale of the land, if any, is to be gathered from such correspondence. The defendant lived in Tennessee, while the plaintiff's home was in Kentucky, and we learn from the evidence in the case, but not from the correspondence, that the land involved is a part of a much larger tract which defendant obtained as devisee under her deceased husband's will. The part of that tract involved herein, and about which the correspondence occurred, is the south part of the larger tract which the defendant's husband devised to her.

The first letter opening up the negotiations was written by plaintiff to defendant on December 7, 1914, which, after proposing to buy certain kinds of timbers, says:

"Well Any I want you to write me the best price you can on part of your land beginning on B. R. Twyford corner on the road that leads to Jake Bell's & running a straight line to the old flat field & with the flat field fence up in the mountain above Barnes."

In defendant's answer to that letter, written on the 9th of December, she says:

"I will ans. your letter rec. yesterday evening. Will say in regard to the land I will sell you the mountain place if you want to buy it making the fence the line by

the poplar, then a straight line to a little scrub oak just on the outside of the fence that goes around that field, then a straight line to the mill tract corner at the old church house spring branch. Yank knows where it is, also Mr. Jode Abbott and Castillo knows where the scrub oak is I mention."

Further on in the letter she states that she will accept $700.00 for the land as laid off by the line which she describes, on condition that plaintiff would arrange with her tenant who was occupying her farm, and pay her $400.00 cash, retaining a lien for the balance, but stating that she wanted to know "at once" whether the proposition would be accepted.

Plaintiff replied to that letter, but in which he changed the line as described in the letter of defendant so as to include more land, and offering her only $600.00 for the increased quantity, which letter was written December 12, 1914.

In response to that letter defendant wrote on December 16, 1914: "I will make the line by the fence at the poplar, then straight to the road, then to the mill corner at the spring branch where I spoke about, and give you all that boundary. There would be no use to run the outside lines, just the line between us, I reckon I will take the $600.00, if you can pay it all now, and you settle with Mr. Dobbs. . . . That is the very best I can do, and I am really ashamed to do that but I just thought as we had made so many trials to trade and never had made one I would trade for once. Now if you want to do this let me know at once, for this offer wont stand for very long."

In response, plaintiff, on December 21, wrote:

"Well Any we are very close to a trade. Now Any you know when a man buys anything he wants it. Mr. Dobbs says he will do what is right about the rent of the tract you are offering to sell me & I know he will now if you will credit his note & fix for me to have possession. I will take the place and pay you $600.00 down or you knock off the interest one year which would be $36.00 & I will fix it up with Mr. Dobbs, so you see that we are close to a trade but it may be a dear trade to me as it is rough & will cost a heep to fix it up. Sometimes I think I ought not to trade & then I think I need it for pasture so if you want the $600.00 & fix for me to have possession, it is a trade & I will have the deed drawn & send

it and the money to you. Now if this is a trade I want to know at once so I can go to work.''

In reply to that letter defendant, on December 22, wrote plaintiff, saying:

''Will say if you can manage to send me the money in the next few days 1 will accept your offer of the $564.00, and you settle with Mr. Dobbs. Now if you can do this at once I will trade, as there is a deal I can make if I can get the money in time. I know that is awful little to take for the place, but Maybe I can live over it. Well I suppose you know where to make the line. You can send the deed and checks, if it is convenient send the checks three hundred dollars ($300.00) and $264.00 separate.

''Awaiting your reply, I am as ever your friend, Anna McGowan.''

That letter was not answered by plaintiff until December 28, at which time he wrote, in substance, that he would, as soon as the weather would permit, run the line and make the necessary surveying and prepare the deed and enclose it, together with checks, to the defendant.

Other correspondence followed not material to the case, but in which the plaintiff makes a proposition to buy the entire farm owned by the defendant upon certain terms, which were refused.

On January 7, 1915, plaintiff sent to the defendant his checks and a prepared deed describing the land by metes and bounds with the division line as he understood it, but different from what defendant claims that she stated in her letters of December 9 and December 16, 1914.

In the meantime, defendant, through other arrangements, had obtained the money to supply her pressing needs at that time, and which she had mentioned in some of her first letters. On January 12, 1915, defendant returned the deed unsigned, as well as the checks, and declined to carry out the alleged contract.

Defendant contends that she never proposed to sell any land except that part of her farm lying south of the line which she first described in her letter of December 9, 1914. That line, as described in that letter is: ''Making the fence the line, by the poplar, thence a straight line to the little scrub oak just on the outside of the fence that goes around that field; then a straight line to the mill tract corner at the old church house spring branch.''

After receiving the letter of plaintiff of date December 12, in which he proposed a different line, defendant, in her letter of December 16, says: "I will make the line by the fence at the poplar, thence straight to the road; then to the mill corner at the spring branch, where I spoke about."

It is insisted by the defendant that the two lines mentioned in those two letters which she wrote are the same, although expressed in a little different phraseology, while it is the contention of the plaintiff that the one mentioned in the letter of December 16 conforms to the one which he proposed in his letter of December 12, but the court, as we have said, upheld the contention of the defendant on this point, and we think correctly so. Practically the only difference in the two descriptions of the dividing line as indicated by defendant in her two letters is that she omitted to mention in her letter of December 16 the "little scrub oak." There are the same number of calls in the two lines as she described them, and each of them calls for the line to be run with an old fence to or just past a poplar, and to there rest and run from *that* point in a straight line (but not to continue straight with line of first call) to the road. In the first letter, December 9, she mentions the scrub oak, but the proof shows that it was located on the road, and further down it than the point of intersection if the line had continued straight after running with the fence and by the poplar until it reached the road.

To run the line in the manner last mentioned would include some ten or more acres than to run it in a straight line to the road at the scrub oak from the stop after running with the fence past the poplar. In other words, plaintiff contends that the line should continue to run straight from the beginning until it strikes the road; whereas, defendant contends that she intended and stated that the line after passing the poplar, running with the fence, should change so as to run to the road at the scrub oak. We think that her language is not only susceptible of the construction for which she contends, but that it is the more reasonable one from the language used, especially when viewed in the light of her phrase which she employed in her letter of December 16, "where I spoke about." Evidently she referred to the line which she had spoken about in her letter of December 9. This conclusion is further fortified by the fact that she had previously stated that she would take not less than $600.00

for the land which she proposed to sell, and she was making a proposition in her letter of the 16th to accept $564.00, as plaintiff had proposed in his previous letter.

To adopt the contention of plaintiff would make defendant not only surrender $36.00 from her proposed price of $600.00, but would also compel her to convey more land than she had offered to do, and that, too, for the reduced price. We do not think she intended to do so. It therefore results that the minds of the parties did not meet upon the subject matter of the contract.

This is not a case where there is a proposition to sell all of a named tract of land, but it is one where a part of a tract lying south of a described line is the subject matter of the contract, and if the minds of the parties did not meet on the true location of the line, then they have failed to agree upon the subject matter of the contract.

We are aware that the rule is that the intention of the contracting parties must be gathered from a reasonable construction of the language used and not modified or altered by any undisclosed intention or secret understanding of either of them. Bell v. Offutt, 10 Bush 638, 9 Cyc. 244; Ochs v. Kramer, 32 Ky. Law Rep. 762. But, as we have seen, a reasonable construction of the language employed by defendant justifies the interpretation upon which she is now insisting, and there can be no doubt about the dividing line which plaintiff described in his letter of December 12, being different and cutting off more land.

There can be no enforcement of a contract when the minds of the parties failed to meet upon any essential element, particularly upon the subject matter. The general rule is stated in Page on Contracts, section 74, thus:

"If A makes an offer to B concerning a given subject matter X, and B understands that A is making an offer concerning Y, and accepts the offer concerning Y, no contract exists. . . . So a mistake as to the tract of land agreed upon, or as to the location of a boundary line, prevents any contract from existing." See, also, Louisville Railway Co. v. Kellner-Dehler Realty Co., 148 Ky. 765, and McKnight v. Broadway Investment Co., 147 Ky. 535, and authorities therein referred to.

Under the rule as thus announced, the parties themselves having failed to agree upon an essential element of the contract (its subject matter), it was clearly error for the court to adjudge a specific performance.

This renders it unnecessary to consider two other points pressed upon our attention—that of the insufficiency of the letters to constitute a contract for the sale of the land enforcible under the statute of frauds, and the failure of plaintiff to comply or offer to comply by sending a prepared deed, together with checks, within the time contemplated by the parties.

We are also inclined to agree with another contention made by the defendant, which is that the deed sent to her, and which she was called upon to execute, described the specific tract of land bounded by courses and distances and containing a general warranty, when as she claims all that she ever proposed was to sell only that portion of land to which she had a good title lying south of the proposed dividing line. The execution of the deed sent to her would have obligated her to defend the title to the land within the boundary against all overlapping patents (and it appears that there are some) upon that portion of the farm lying south of the proposed line, when her correspondence shows that she objected to a boundary being given, and suggested that all that was necessary was to run the line as she had indicated, she to convey all of her farm south of that line, but not any designated boundary of land.

It follows that the judgment should be and it is reversed, with directions to dismiss the petition, and for proceedings consistent with this opinion.