McCONNELL *v.* HARRELL & NICHOLSON CO.

1. Sales — Contracts — Meeting of Minds — Offer and Accept-
ance.
In an action for breach of a contract to take a quantity
of ice, a series of letters in which the defendant asked
for rates on ice, saying it could probably store *10 cars*
at a time, to which communication defendant replied, re-
ceiving another tentative note and following with an in-
terview, whereupon defendant wrote that it had deter-
mined to handle the ice provided it cost not to exceed
90 cents a ton, and would "be willing to enter into a con-
tract to take a minimum of 2,000 tons with the privilege
of 5,000 tons," advising plaintiff that it would be difficult
to estimate how much the defendant would need, but *to*
put himself in position to furnish the maximum, was a
valid offer, and being answered by a letter of plaintiff
that he would accept the proposition of 90 cents per ton
and would order lumber at once to put up the icehouse,
suggesting that the contract be put in written form, where
plaintiff afterwards delivered about 100 tons of ice on
the contract, sustained a judgment for its breach.

2. Same—Intent.
Whether the correspondence constituted a completed con-
tract or were steps in negotiations leading up to one, was
a question of the intention of the parties.

3. Same.
Although the suggestion made by plaintiff that the contract
be put in written form tended to impair his claim that
the agreement was complete, the suggestion on his part
could be construed into a mere desire to have the terms
put in a more formal shape and did not prove that a
further agreement in writing was necessary to bind the
parties.

4. Same—Damages—New Trial.
*Held*, also, that the verdict was excessive and did not allow
a sufficient sum for shrinkage and should be reduced from
$3,100 to $2,500.
183 Mich.—24.

Error to Wayne; Van Zile, J. Submitted November 25, 1913. (Docket No. 78.) Decided December 19, 1914.

Assumpsit by Edward J. McConnell against Harrell & Nicholson Company for breach of contract. Judgment for plaintiff. Defendant brings error. Reduced and affirmed.

*Henry B. Graves,* for appellant.

*Albert McClatchey,* for appellee.

BIRD, J. Plaintiff seeks compensation in this suit for defendant's refusal to accept and pay for certain ice which he claims it contracted for to be delivered in the year 1910. In the year 1909 plaintiff was engaged in the business of farming and putting up ice at or near Waterford, a short distance from the city of Detroit. In November of that year he claims to have entered into a contract with defendant to furnish it ice to supply its retail trade in the city of Detroit. Letters which passed between the parties are relied upon to establish an enforceable contract. On October 20, 1909, defendant wrote plaintiff as follows:

"MR. E. J. MCCONNELL, Mgr.,
                "Waterford, Mich.
"*Dear Sirs:*
"Am in receipt of your letter relative to lake ice. Kindly advise me your rate, R. R. facilities, etc. We may decide to handle ice next year and have been looking for a good product. We can arrange to store probably 10 cars at time. It will be necessary to get to rock bottom in order to enable us to handle and make a fair return for our labor.
                "Yours truly,
                        "HARRELL & HOFFMAN CO.,
                        "Per O. HARRELL."

Eight days thereafter the defendant again wrote plaintiff:

"MR. E. J. McConnell,
                "Waterford, Mich.
*"Dear Sir:*
    "Your letter 27th recd. to-day. I shall be up to see
you one day the coming week and look over the situ-
ation. Kindly advise by return mail when it will be
convenient for you to meet me, etc. I could phone you
if you have connection with Detroit.
                "Yours truly,
                        "HARRELL & HOFFMAN CO.
                                "HARRELL."

Following these letters, the parties had several in-
terviews, in which they discussed the subject-matter
of the contract, and on November 16th defendant ad-
dressed to plaintiff the following letter:

"MR. E. J. McConnell,
                "Waterford, Mich.
*"Dear Sir:*
    "After going over the situation carefully, we have
decided to handle ice provided it will not cost us to
exceed 90c, per ton 2,000 f. o. b. cars Waterford, and
will be willing to enter into a contract to take a mini-
mum of 2,000 tons with privilege of 5,000 tons. You
will readily understand that being a brand-new propo-
sition with us it is difficult to estimate probable ton-
nage; however, you will put yourself in position to
furnish us up to the maximum, and it won't take long
after the ice season begins for us to determine our
approximate requirements, thus giving you time
enough to take on additional business required to get
rid of the harvest. Our desire will be to hook up with
you for our supply from year to year and be assured
we will get our requirements without seeking new
source of supply. We have, we might say, made a
success in our present time with strong competition
and without an iceman within two miles of us we fail
to see why we should not find an outlet for a goodly
tonnage of ice each season and a steady business the
year round.
    "We shall expend $600 to try it out next year and
will add as it grows.

"Awaiting your acceptance and wishes as to further arrangements, we are,
"Yours truly,
"HARRELL & HOFFMAN CO.,
"O. HARRELL, Prest. Mgr."

To this letter plaintiff replied, accepting the defendant's proposition. He retained no copy of his letter, but, after laying the proper foundation, was permitted by the court to show the contents of it, which were as follows:

"I accept your proposition of 90c. per ton f. o. b. Waterford. I will go right at once and order my lumber to put up my icehouse and get ready for you and build them."

He also stated in the letter that "we would have a written contract drawn up when I come in."

In reliance on the letter of November 16th, and his reply thereto, the plaintiff claims he at once purchased lumber, erected his icehouse and in the winter following harvested over 5,000 tons of ice, 4,500 of which he placed in the icehouse, and the remainder—600 or 700 tons—was left on the bank of the lake to be used in taking care of immediate deliveries. And he further claims that on February 22d he shipped the defendant five cars, approximately 100 tons of ice, to apply on his contract; that from time to time defendant made various excuses for not ordering any more ice, and finally, on June 10th, it advised him that no more ice would be accepted.

It is the claim of the defendant that whatever negotiations were had were simply preliminary to a contract, which was never entered into upon its part. It admits that it received the five cars of ice, but says that that shipment was an independent shipment, and had no reference whatever to any previous contract. The trial court submitted to the jury the question as to whether plaintiff wrote and mailed to defendant his

letter of acceptance; also the question as to whether the five cars of ice were shipped by plaintiff in part performance of his claimed contract. They were instructed that, if they found in the affirmative upon either one of those propositions, the contract would be a valid one.

The jury awarded the plaintiff a judgment of $3,600. A new trial was applied for, and upon the hearing thereof the judgment was reduced from $3,600 to $3,100. It was clear to the trial court that the jury had accepted plaintiff's testimony that he had 4,000 tons in his house on June 10th, and had given him 90 cents per ton therefor, without making any deduction for loading the same on the cars at Waterford, which plaintiff admitted would cost 12½ cents per ton. To compensate for this omission, the court ordered a new trial in the event plaintiff did not acquiesce in the reduction. The defendant has removed the proceedings to this court for review, and its assignments of error raise two questions:

(1) Do the letters establish a valid contract?
(2) Was the judgment rendered for a larger amount than the proofs would justify?

Whether these letters constitute a completed contract, or whether they were but steps in negotiations leading up to one, is a question of the intention of the parties. *Gates* v. *Nelles*, 62 Mich. 444 (29 N. W. 73); *Wardell* v. *Williams*, 62 Mich. 50 (28 N. W. 796, 4 Am. St. Rep. 814); *Central Bitulithic Paving Co.* v. *Village of Highland Park*, 164 Mich. 223 (129 N. W. 46, Ann. Cas. 1912B, 719). In *Mississippi, etc., Steamship Co.* v. *Swift*, 86 Me. 259 (29 Atl. 1063, 41 Am. St. Rep. 545), which considers a like question, the following suggestions are made as an aid in determining the intention of the parties in such cases:

"In determining which view is entertained in any particular case, several circumstances may be helpful,

as: Whether the contract is of that class which are usually found to be in writing; whether it is of such nature as to need a formal writing for its full expression; whether it has few or many details; whether the amount involved is large or small; whether it is a common or unusual contract; whether the negotiations themselves indicate that a written draft is contemplated as a final conclusion of the negotiations. If a written draft is proposed, suggested, or referred to during the negotiations, it is some evidence that the parties intended it to be the final closing of the contract."

In order to be enforceable, this contract, under our statute, would have to be in writing. It was in writing. It had few details. The amount involved was not what would be regarded in the commercial world as a large amount. The contract would be considered an ordinary one. There is nothing in the contract which indicates that a written draft should be made before it became binding; in fact, the reverse of that is inferable from plaintiff's statement in his letter of acceptance, wherein he stated that he will proceed at once to purchase his lumber and erect his icehouse. True, he suggests that the contract be put in writing. This makes against the plaintiff's contention; but even this suggestion may be construed merely as a desire to have the terms of the contract put into more formal shape. *Mississippi, etc., Steamship Co.* v. *Swift, supra.* The question was already settled that the defendant would go into the ice business. The price at which it was willing to contract was stated to plaintiff. The amount of tonnage it would need was stated as definitely as the state of its trade would permit, and it was stated in one of the letters that ten cars could be stored at one time on its siding. There appears to have been nothing left to consider or to agree upon to make it a completed contract, and we are of the opinion, in view of the finding of the jury as to the

letter of acceptance, that the contract was a completed one.

The judgment is further questioned because the jury had no basis for finding as large a verdict as they did. The plaintiff testified as to the dimensions of his icehouse. He further testified as to the weight of a cubic foot of ice. We are satisfied from a computation based upon his own figures that the capacity of his icehouse was not as great as he estimated it. We are further convinced that there was not sufficient allowance made by the jury for the natural shrinkage of ice.

For these reasons we are of the opinion that the verdict should be reduced from $3,100 to $2,500. The plaintiff will be given 30 days after a remittitur is filed to elect to file his consent to a judgment of $2,500. Should such consent not be filed within that time, the judgment will be reversed, and a new trial ordered. Otherwise it will stand affirmed, with costs to defendant in any event.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.