ERNEST L. VANTREES, Appellant, v. J. A. TRIMBLE, Respondent.

In the Kansas City Court of Appeals, May 21, 1923.

1. **APPELLATE PRACTICE: Brief: Assignments of Error: Where Brief Contained no Assignments of Error and no Error is Alleged in the Trial of the Case, the Brief May Be Disregarded.** Where there were no assignments of error in appellant's brief and under his points and authorities no error is alleged in the trial of the case, appellant's brief may be disregarded.

2. **———: Exceptions: Where no Exception Was Saved to Sustaining of Demurrer to Evidence, There is Nothing Before Appellate Court for Review Except the Record Proper.** Where there was no exception

saved to the action of trial court in sustaining demurrer to the evidence, complaint with reference thereto cannot be reviewed because there is nothing before appellate court for consideration except the record proper.

3. **CONTRACTS: Mere Reference to a Future Contract in Writing Does Not Negative the Existence of a Present Contract.** Where the parties assent to all of the terms of a contract, the mere reference in the acceptance by one of the parties to a future contract in writing to be signed by the other party does not negative the existence of a present contract.

4. ———: **Sales: Telegram Accepting Offer Which Referred to Sending of Written Contract by Mail Held Unconditional and Not Qualified Acceptance.** Where terms of a contract of sale of drug store, stock and fixtures had been fully discussed by parties, and buyer wrote seller a letter that he would accept his offer and specified terms upon which he would buy, requesting seller to wire him at once if he would sell, and on receipt of letter seller wired buyer "I accept your offer sending contract by mail today," *held* that a valid contract was consummated at time telegram was sent the same being an unconditional acceptance of the offer to buy, and the reference to sending of contract by mail did not make it a qualified acceptance of the offer nor amount to a counter proposition.

5. ———: ———: **Possession: Where Contract of Sale of Drug Store Did Not Specify When Possession Would be Given Buyer, Held the Law Will Imply That Possession Was to be Delivered Within a Reasonable Time.** Where contract for sale of a drug store, consisting of stock and fixtures, did not state when possession of store would be delivered to buyer, the law will imply that possession was to be delivered within a reasonable time.

6. ———: ———: **Where Contract of Sale Was Consummated Any New Proposition Contained in Proposed Written Contract Afterward Forwarded to Buyer Could Not Change the Contract That Had Been Fully Agreed Upon.** Where seller of drug store, consisting of stock and fixtures, accepted buyer's offer by wire, and in a letter transmitting a written contract requested buyer to "be here in time to take possession by the 13th or 14th," *held* that even if such request could be said to be different from the one offered by buyer, who had written that he wanted to take possession as soon as possible, it would be immaterial for the reason the contract was consummated at the time the telegram accepting offer was sent and any new proposition made by seller in proposed contract later forwarded to buyer could not change a contract that had been fully agreed upon.

7. ———: ———: Subject-matter of Contract for Sale of Drug Store, Consisting of Stock and Fixtures, Held Not too Indefinite to Form the Basis of a Valid Contract. Where subject-matter of a contract was the sale of a drug store business, stock and fixtures, the fact that between the time the offer was accepted and the time plaintiff was to take possession the seller could have depleted the stock of goods, did not make the subject-matter of the contract too indefinite to form the basis of a contract, as it was not contemplated that buyer was to get the very articles on hand at the time the contract was consummated, but that the stock would change somewhat.

Appeal from the Circuit Court of Bates County.—*Hon. C. A. Calvird,* Judge.

AFFIRMED.

*DeArmond & Maxey* for appellant.

*D. C. Chastain* for respondent.

BLAND, J.—This is an action to recover the sum of $500. At the close of plaintiff's evidence the court gave to the jury defendant's instruction in the nature of a demurrer to the evidence, resulting in a verdict and judgment in favor of defendant and plaintiff has appealed.

The facts show that defendant owned a drug store, consisting of stock and fixtures, in Butler, Missouri, which he desired to sell. Plaintiff lived in Denver, Colorado, but had formerly lived in Butler and had visited there in April, 1920. Defendant called on plaintiff while in Denver in July or August, 1920, and the sale of the store to plaintiff was suggested. After defendant returned home a long correspondence ensued regarding the sale and purchase of the drug store. Plaintiff went to Butler in October, 1920, and saw the store. On November 27, 1920, defendant wrote to plaintiff in Denver making a definite proposition to sell plaintiff the store subject to a prior sale to a man in Springfield, Missouri. On receipt of this letter plaintiff on Novem-

ber 29th wrote defendant stating that he would accept defendant's offer and specified the terms upon which he would buy and for defendant to wire him at once if he would sell the store to him. On receipt of the letter on December 2, 1920, defendant wired plaintiff "I accept your offer sending contract by mail today."

In the meantime on December 1, 1920, plaintiff's sister who lived in Butler, went to defendant's store and offered to give defendant $500 as, in the words of the petition, "earnest money upon the contract." Defendant refused to take the money on that day for the reason that he wanted to wait until he could hear from the man in Springfield with whom he had been negotiating for the sale of the store. The next morning defendant sent plaintiff the wire mentioned supra and at noon of that day plaintiff's sister came into the store at the request of defendant and paid him the $500. Defendant had a contract drawn, dated on the last mentioned day, acknowledging the receipt of the $500 in part payment of the purchase price of the store. This contract was signed in duplicate and one copy was mailed to plaintiff by the defendant. In the letter of transmission defendant stated, "Enclosed please find contract, please sign and return same to me. Try and be here in time to take possession by the 13th or 14th." Plaintiff did not sign the contract but came to Butler on the 6th of December and then refused to take the store or sign the contract, claiming that the stock had been depleted. No other reason for plaintiff's refusal to take the store was given by him at the trial. Defendant refused to return the $500 paid by plaintiff and this suit was brought, the petition alleging that defendant falsely represented to plaintiff's sister that he had accepted plaintiff's offer contained in plaintiff's letter of November 29th, thereby inducing her to pay the $500; that defendant had not accepted plaintiff's offer nor did he at any time accept said offer.

214 M. A.—3

There are no assignments of error in plaintiff's brief and under his Points and Authorities no error is alleged in the trial of the case, for this reason we might disregard plaintiff's brief. However, we assume that complaint is made of the court's action in sustaining the demurrer to the evidence but as there was no exception saved to the action of the trial court, there is nothing before us for review except the record proper. [Franklin v. Holliway, 203 S. W. 664.] No complaint is made as to anything shown in the record proper.

However, we think that plaintiff failed to prove the cause of action alleged. Plaintiff insists that at the time the $500 was paid his offer to buy the store had not been accepted for the reason that in defendant's telegram accepting the offer he stated that he was sending the contract by mail and that this was a qualified acceptance of an offer and amounted to a counter-proposition on the part of the defendant. It is also claimed that the contract drawn and signed by defendant for plaintiff to sign was in terms different from plaintiff's offer and, therefore, there was no acceptance of the offer. We think there is no merit in these contentions. The telegram was an unconditional acceptance of plaintiff's offer. The mere fact that defendant desired the terms of the contract already agreed upon to be reduced to a formal writing would not make a qualified acceptance or a counter-proposition. It has been held that where the terms of a contract are agreed upon and the parties make it on condition that the terms be reduced to writing and signed by them, there is no contract until this is done. On the other hand, if the parties assent to all of the terms of the contract, the mere reference to a failure contract in writing does not negative the existence of a present contract. [Green v. Cole, 103 Mo. 70, 76; 13 C. J. 290.] In the case at bar there was not even a mutual reference or understanding as to the matter of a future contract in writing but merely a suggestion on the part of one of the parties that he would forward a written contract to be signed by the

other party. There is no question but that a valid contract was consummated at the time the telegram was sent and one that could have been enforced by plaintiff.

There is nothing contrary to this holding in the case of Railroad v. Joseph & Brothers Co., 169 Mo. App. 174, and Union Service Co. v. Drug Co., 148 Mo. App. 327. In the former case the seller offered to sell one thousand tons of rails and angle bars at $20 per ton. The buyer by telegram accepted the offer ''subject to inspection.'' The seller then wired the buyer that he would accept his price for one thousand tons and stated that he was ''Mailing contract, 500 tons shipment thirty days—500 tons shipment sixty days.'' It was held that as the seller wanted a written contract specifying that 500 tons should be delivered in thirty days and 500 in sixty days, his action amounted to introducing new terms as the law would imply that the whole should be delivered within a reasonable time. What was said in reference to the matter of there being no unqualified acceptance of the offer on account of the fact that the seller wired that he would mail a contract, must be read in connection with all the facts in the case. In the case at bar the terms of the contract were agreed upon at the time the wire was sent and no suggestion was made in the telegram that defendant desired to vary the terms upon which plaintiff offered to buy the store. In the case of Railroad v. Joseph & Brothers Co., supra, 1. c. 182, some general language is used in the opinion about the effect of a buyer, in his acceptance of an offer, stating that the written contract is being mailed. This language must be read in connection with the facts in that case. There it was quite apparent that it was intended by the party that no contract should be in existence until the written agreement was signed. No such intention on the part of defendant appears in the case at bar but it was evidently his intention to merely reduce to writing the agreement already made. [See Sparks v. Pittsburgh Co., 159 Pa. State, 295, 300, 301.] In the Union Service

Company case there was no acceptance of the offer for the reason that the reply proposed to furnish the storm buggies and outfits for a period of two years while the offer was to take four vehicles as long as the price of the outfits was satisfactory. We think that at the time defendant accepted the $500 plaintiff's offer had been unconditionally accepted.

If the terms of the contract sent plaintiff by the defendant for plaintiff to sign differed at all from the offer of plaintiff, the difference is slight. The writing sent by defendant to plaintiff to sign does not state when possession of the store would be delivered to plaintiff. Under the ruling of Railroad v. Joseph Brothers Company, supra, the law would read into such a contract that possession was to be delivered within a reasonable time while plaintiff's offer was, ''I would want to take possession as soon as possible.'' Even if defendant's proposition could be said to be a different one from the one offered by plaintiff, it would be immaterial for the reason that the contract, as we have already stated, was consummated at the time of the sending of the telegram and any new proposition as an afterthought made by the defendant in the proposed contract that he forwarded to plaintiff for his signature could not change a contract that had been fully agreed upon.

We do not think that the subject-matter of the contract was too indefinite to form the basis of a contract. Plaintiff wrote that he wanted to take possession as soon as possible. The fact that between the time the offer was accepted and the time plaintiff was to take possession defendant could have depleted the stock of goods in his store, would not affect the situation. The subject-matter and the circumstances of the contract show that plaintiff was buying a business that was in operation and it was not contemplated that he was to get the very articles on hand at the time the contract was consummated but that the stock would change somewhat. If the stock was removed by the defendant not in the usual

course of business and it became depleted, then plaintiff would have had a cause of action against the defendant, but the contract would not have been void. The contract did not contemplate that the defendant should deplete the stock.

The judgment is affirmed. All concur.