## Dohrman et al. v. Sullivan et al.

May 27, 1949.

464

Sawyer A. Smith and H. G. Hightower for appellants.

Barbour & Bassmann for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The judgment directs specific performance of a contract to convey real estate. The question is whether there was a completed contract or merely negotiations in contemplation by both parties to enter into a formal contract which was never in fact executed.

The appellants, Heer Dohrman and Charlotte Dohrman, owners of residence property in Covington, had placed it in the hands of a Cincinnati real estate broker for sale under a written contract which expired, after extension, on March 5, 1946. But the agent kept the key to the house and continued its sign on the premises. Through a Covington real estate agent, Howard F. Sullivan and his wife procured the key, examined the property, and on March 29 executed a written offer to buy the property. It was addressed to the Cincinnati agent, a corporation, which sent a telegram to the owners, who

were in Florida, advising them it had sold the property to the Sullivans for $10,250 cash and asking confirmation and for certain information for preparation of the deed. On the same day the owners by mail acknowledged the telegram, congratulated the brokers on obtaining a purchaser, expressed the hope that all arrangements would be completed and the sale effected. They gave definite information about the size of the lot and the title and stated they would see that the broker had all information should the sale go through. There was an exchange of several letters regarding taxes, expenses, etc. All of these things were eventually agreed upon. Of particular importance is this statement in Dohrman's letter of April 10: "If the answers are to our satisfaction, we will immediately forward the sales contract which we have prepared which contains the terms of the agreement. This of course would act as a confirmation of the sale. If a sale is confirmed, I shall forward the deed. I have decided to draft it myself." Finally, on April 17 Dohrman wrote the agent enclosing three copies of a formal sales contract for the "prospective purchasers" to sign. This instrument stated that Heer Dohrman and Charlotte Dohrman had "bargained and sold" the described property to Howard F. and Agnes Sullivan for the agreed price of $10,250 to be paid in cash and also the agreement as to the taxes and time of possession. In this letter Dohrman requested that when the Sullivans had signed the acceptance, which he had written on the instrument, "we will sign them, retain one for ourselves and return to you a copy for them and a copy for your company's record." The acceptance provision of the sales contract was promptly signed by the Sullivans and returned to Dohrman in Florida on April 19 by the agent. In its letter transmitting the acceptance reference was made to the examination of the title by an attorney and that he had called attention to the absence of a record of payment of inheritance taxes on the estate of Dohrman's mother from whom he had inherited the property. The question is whether this letter and the acceptance by the Sullivans constituted a complete and binding contract, for the Dohrman's never did sign the formal sales contract or return any copy of it to the agent or to the Sullivans. Dohrman merely advised his agent that when the matter of inheritance taxes had

been investigated he would communicate further with him. To this the agent replied that the purchaser's attorney had advised it would be agreeable to close the transaction at once, paying over the net proceeds less $300, which could be put in escrow until the inheritance tax question should be settled. A few days later the agent telegraphed Dohrman that the purchaser was complaining about the delay in closing the deal and asked about his intention to do so. Dohrman replied that he did not agree to withholding $300 and that he did not intend to convey the property until his title or right to do so was completely vested in himself and that he did not care to be worried unduly about the transaction. Finally, on May 10 Dohrman wrote his agent that circumstances had arisen which prevented him disposing of his house and that he intended to return to Covington and occupy it.

The Chancellor was of opinion that the defendants' letter of April 17, above described, with which was enclosed the formal sales contract was a sufficient memorandum under the statute of frauds to bind them through the written acceptance of the other parties; that this constituted an offer to sell and an unconditional acceptance. The court pointed to portions of the defendants' previous letters of April 10 and 17, above quoted, with the return to them on the 19th of the signed contract as sufficient to bind them. We think this was the proper construction of the transaction. There was no condition attached, and it was not necessary that they should have in addition signed their own proposal to sell the property after it had been accepted and have transmitted a copy of that signed proposal to the purchaser.

Preliminary negotiations leading up to the execution of a contract are distinguishable from the contract itself; likewise, a mere agreement to reach an agreement, which imposes no obligation on the parties thereto. It is sometimes a close question whether correspondence between parties constitutes final and complete mutual assent or meeting of minds, essential to the creation of a contract. The correspondence may constitute only negotiation and but evidence their intention ultimately to form or to execute a contract. The question of whether there was a consummated contract is to be determined

from the consideration and practical construction of all the separate letters or telegrams that make up the whole correspondence. Shaw v. Ingram-Day Lumber Co., 152 Ky. 329, 153 S. W. 431, L. R. A. 1915D, 145; 17 C. J. S., Contracts, secs 58, 62.

The Restatement of the Law of Contracts, Vol. 1, sec. 26, thus states the applicable rule: "Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but other facts may show that the manifestations are merely preliminary expressions." To state the rule less abstractly: Where all the substantial terms of a contract have been agreed on and there is nothing left for future settlement, the fact alone that the parties contemplated execution of a formal instrument as a convenient memorial or definitive record of the agreement does not leave the transaction incomplete and without binding force in the absence of a positive agreement that it should not be binding until so executed. 12 Am. Jur., Contracts, secs. 23, 25.

In our early case of Bell v. Offutt, 10 Bush 632, 73 Ky. 632, the court said: "If two persons enter into a verbal agreement about a matter as to which an enforceable parol contract can be made, it would be no defense, when one of them is sued for a breach of the contract, that he understood it would not be obligatory unless reduced to writing; nor does a contemporaneous agreement to reduce a contract to writing make its validity depend upon its being actually reduced to writing and signed. The agreement to put it in writing amounts to no more than an agreement by the parties to provide a particular kind of evidence of the terms of their contract, and no more prevents its enforcement upon other legal evidence than an agreement that they would go to a named individual and state to him the terms of their contract would render the testimony of any other competent witness inadmissible to prove what the contract was." This is followed by Hollerbach & May Contract Co. v. Wilkins, 130 Ky. 51, 112 S. W. 1126; Tucker v. Pete Sheeran Bro. & Co., 155 Ky. 670, 160 S. W. 176; Cincinnati Equipment Co. v. Big Muddy River Consoli-

dated Coal Co., 158 Ky. 247, 164 S. W. 794. There are many foreign cases stating and applying the rule. Annotations, 122 A. L. R. 1217; 165 A. L. R. 756. See particularly, Bierman v. Barbieri, 124 Misc. 157, 207 N. Y. S. 174; Vantrees v. Trimble, 214 Mo. App. 30, 251 S. W. 396; McConnell v. Harrell & Nicholson Co., 183 Mich. 369, 149 N. W. 1042; Universal Products Co. v. Emerson, 6 W. W. Harr. 553, 36 Del. 553, 179 A. 387, 100 A. L. R. 956, quoting Mississippi & D. Steamship Co. v. Swift, 86 Me. 248, 29 A. 1063, 41 Am. St. Rep. 545, and Disken v. Herter, 73 App. Div. 453, 77 N. Y. S. 300, affirmed 175 N. Y. 480, 67 N. E. 1081. Of particular pertinence is United States v. P. J. Carlin Construction Co., 2 Cir., 224 F. 859, 862, in which the court said, after referring to an oral agreement intended to be reduced to writing: "But where the parties reach an agreement through correspondence, intending that the agreement shall be subsequently expressed formally in a single paper or document, which, when signed, should be the evidence of what had been agreed upon, the obligatory character of the agreement cannot ordinarily be defeated by the failure of either party to sign the formal contract. If the court can see from the writings or correspondence that the minds of the parties have met, that a proposal has been submitted by one party which has been accepted by the other, and that the terms of the contract have been in all respects definitely agreed upon, one of the parties cannot evade or escape from his obligation by refusing to sign the formal contract, which the parties understood was subsequently to be drawn and executed."

If all the material terms which are to be incorporated into the contemplated future instrument have been agreed upon, it may be inferred that the instrument is to be a mere memorial of the contract already final by the earlier mutual assent of the parties to those terms. Rosenfield v. United States Trust Co., 290 Mass. 210, 195 N. E. 323, 122 A. L. R. 1210. In the instant case, all the terms and conditions had been agreed to as shown by the telegrams and letters exchanged between the Dohrmans and their agent and its transactions with the purchasers in connection therewith. This is manifested by the fact that the vendors of the property had prepared the "sales contract" and sent it through their agent to the vendees who accepted the instrument. The

matter of putting $300 in escrow had been merely proposed and was never made a condition to buying the property. The vendors' offer had already been accepted. It is true that the owners had not then signed the paper and only contemplated doing so after the acceptance form had been signed by the vendees. They are bound, nevertheless, by their signature to the letter which transmitted it since there was a delivery back to them of the acceptance of what was under the circumstances a definite proposal to sell their property.

In Gorman v. Gorman, 210 Ky. 65, 275 S. W. 366, the parties had orally agreed to buy and sell a coal lease. The seller wrote the buyer enclosing a formal assignment of the lease and another writing evidencing the real consideration for it and asked that he sign the papers and return them, saying that he, the seller, would then sign them and send back the duplicate. The buyer did not sign or return a copy of the instrument but kept all of them. The seller sued him for specific performance. The particular question was not whether there had been a meeting of minds of the parties but whether the contract was enforceable under the statute of frauds against the buyer. The legal construction of the transaction, however, is applicable to the present state of facts. We held in the Gorman case that the signed letter transmitting the unsigned documents was a signed proposal to contract and so far as the seller was concerned would have been binding on both parties if that proposal had been accepted. The purchaser not having signed the paper or delivered it, the seller was thereby released because of the absence of mutuality. In the instant case we have a very definite and complete acceptance and delivery to the sellers of their written proposal. Thus there was a completed instrument, mutually binding upon the parties. We are of opinion, therefore, that the judgment is correct.

Judgment affirmed.