## STRANEY v. SMITH et al.

Court of Appeals of Kentucky.
Jan. 16, 1953.

Rehearing Denied March 27, 1953.

Blakey Helm, Louisville, for appellant.

J. L. Richardson, Jr., Louisville, for appellees.

STANLEY, Commissioner.

The action is by Mrs. Ruby J. Straney against Mrs. Betty Smith and her son, Samuel S. Smith, for damages for breach of contract to buy the furnishings of a rooming house. The verdict was for the defendants under instructions to find for the plaintiff if the jury believed the defendants' written offer was accepted by her within the time stipulated therein, un-

less it had been agreed that the contract was not to be effective unless and until the defendants had secured a satisfactory lease of the building and they were unable to secure such a lease. The plaintiff, as appellant, primarily contends that she was entitled to a directed verdict and that the instructions submitted irrelevant issues.

In response to an advertisement by an agency that the furnishings and the business of conducting the rooming house were for sale, the defendants inspected the property on the morning of Friday, January 7, 1949. The plaintiff testified the defendants then and there made a definite offer to buy the property for $5,000 and she then accepted it. Miles, the sales agent, testified the defendants decided at the time to buy the furnishings and that there was an agreement "that is, as to the price." His memory, as he indicated, was not clear for the transaction occurred more than a year before the trial. He testified the contract was prepared and signed by the defendants in Mrs. Straney's living room. He is undoubtedly mistaken in this. The writing is a completed blank form of an offer addressed to the sales agent with the provision, "Unless accepted by 6 P. M. on the 7th day of January, 1949, this proposition is null and void." It bears the signatures of Mrs. Smith and her son. The instrument also carries this statement, "The above proposition is accepted at 3 P. M. this 7th day of January, 1949" and to it is appended the signatures of Mrs. Straney "by J. B. Miles, Agent" and also "Approved, Ruby J. Straney."

On the contrary, the defendants testified that the first thing they asked about when they went to see the furniture was the lease on the building, because, as they told Mrs. Straney, they would have to know about that before considering anything. They say the plaintiff advised them she did not have a copy of the lease. They are quite positive in their testimony that no offer was made while the parties were at the house and are corroborated by Mrs. Sam Smith. It is apparent, however, that the parties then agreed upon the price of $5,000.

Early that afternoon the parties met at Miles' office. After some discussion, they went to the office of the Louisville Trust Company, which was the rental agent of the owner of the building, to see about the lease. There is contradiction as to whether the Smiths signed the offer above described before leaving Miles' office or after they returned there. The bill of sale was signed and acknowledged by Mrs. Straney before they left Miles' office. It is insisted that all these papers were prepared in advance of the departure or during the absence of the parties in order to save time. The defendants insist very positively that they signed the offer reluctantly upon the assurance of Miles that there would be no trouble about obtaining a transfer of the lease of the property and that it would be held until everything was straightened out. During these transactions, Mrs. Smith signed checks for $4,-500 payable to Mrs. Straney and $500 payable to the sales agent and delivered them to Miles. He held all these papers. That is certain. Miles and Mrs. Straney testify that after the return of the parties to his office Miles signed the acceptance as her agent and she signed the approval a few minutes later. There is some evidence, however, to the effect that they did not do so until a day or so later, notwithstanding the statement written into the form that it was done at 3 o'clock that afternoon, thereby bringing the acceptance within the stipulated time.

There is confusion as to the transaction with Branham, the representative of the Louisville Trust Company handling the building. The defendants' testimony is very positive that they stated to him, as they had to the plaintiff, that they would not accept a lease containing provisions (1) limiting it to a month-to-month rental instead of a year, (2) that cooking could be done in only one kitchen, and (3) that the lessees had to live on the premises. It was contemplated that Samuel Smith would move into the house at once and that Mrs. Smith would occupy another apartment when her term as County Court Clerk of Hart County expired about a year later. The response of Branham was that

he could not change the terms of the lease but that there would be no trouble, especially about the lessees living on the premises and the use of two kitchens. He assured them that O. P. A. regulations would protect them in the matter· of continuous occupancy. At any rate, the Smiths signed an application for a lease, giving references as to character. He advised them that the transaction could not be closed until Tuesday or Wednesday. A form of lease was prepared for the Smiths but was never executed. There is confusion in the evidence as to what became of this form.

Upon return to Miles' office, the defendants advised him they did not like the terms of the proposed lease and could not accept it unless changes were made. Miles replied that Branham would fix it up. Mrs. Smith insisted that her checks be given back to her although Miles assured her that he would keep them with the other papers, that is the contract and bill of sale, in his safe until the transaction was closed. However, he did surrender the checks to her. During this period, Miles' office cancelled the insurance in the name of Mrs. Straney and issued a policy to the Smiths. They say they did not authorize that and had told Miles they could not see how they could get insurance when they didn't own the property.

It will be understood that the testimony of the plaintiff tends to contradict or does, in fact, contradict this evidence of the defendants, and shows a consummated transaction, possession to be given the following Wednesday.

Upon the following Sunday, Mrs. Smith moved fast and notified all parties that the trade was off and that she would not go through with it.

The above abridgement of the evidence is sufficient to show the conflict. It, with the details omitted from the recitation in the interest of brevity, preponderates to prove a definite acceptance of the written ·offer by the plaintiff within the time stipulated. We are quite sure she was "ready, willing and anxious" to make the sale, leaving only the formal or technical written acceptance as the question. Equally preponderating, however, is the evidence that the defendants' agreement and the execution of the contract were conditional; that the papers were to be held by Miles, the agent; and the purchase was not to become effective until a satisfactory lease had been obtained, and that was not done.

· Concerning the oral transactions at the house: There was so much left for future settlement that it cannot be said there was a consummation of an agreement which would have become operative without the formality of executing written memorials thereof, and thereby to have brought the transaction within the rule stated in Dohrman v. Sullivan, 310 Ky. 463, 220 S.W.2d 973.

■ It is conceded by the appellant in brief that all parties recognized that the transfer of the lease was a condition to the performance of the contract although it was not mentioned in the writing. Her argument is that the condition was met. The defendants' actions with respect to the lease come very close to being an acceptance of a lease and to show that only the completion of the transfer was left open. Branham testified the references were excellent and tended to establish the appellant's contention that the transfer was available. But the defendants' testimony is strongly to the effect that they could not obtain a lease in accordance with the conditions they laid down and Branham never did say they could. Thus, the questions were matters of fact to be determined by the jury.

■ We cannot sustain the point that the issues were not made by the pleadings and, therefore, were not submittable. The petition alleged the consummation of a contract and the answer was a general denial of all the allegations except the residence of the parties. The qualifications or conditions claimed by the defendants, if sustained, would prove there was no binding contract. We think the issues were properly submitted to the jury.

The appellant argues there were two other errors in the course of the trial.

■ Upon cross-examination of Mrs. Smith, plaintiff sought to show that by the

general denial of all the allegations of the petition she was reckless in her statements, and that the plaintiff, by this method, could not only impeach Mrs. Smith as a witness but eliminate the effect of almost every part of the denial. The court sustained the objection. The answer was signed only by the attorney for the defendants. It did not constitute an inconsistent statement by Mrs. Smith, coming within the scope of Sec. 597 of the Civil Code of Practice. She probably knew nothing about this legal procedure. The ruling of the court was proper.

After Mrs. Betty Smith had testified, Mrs. Samuel Smith was introduced as a witness. She testified to what she had heard transpire at Mrs. Straney's house. Samuel Smith was next called to the stand and the plaintiff objected to his testifying because he had not been introduced before his wife, who was not a party to the suit. Sec. 606, subsection 3, Civil Code of Practice. Though the proceeding was irregular, we think it was within the discretion of the court to let Mr. Smith testify. There was certainly no prejudicial error in this. Edmonds v. Hensley, Ky., 240 S. W.2d 631.

The judgment is affirmed.