RENDERED:  APRIL 29, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1208-ME

CHRISTINA E. WAGGONER                                     APPELLANT


v.            APPEAL FROM JEFFERSON CIRCUIT COURT
              HONORABLE LAUREN ADAMS OGDEN, JUDGE
              ACTION NO. 21-D-501677-001


ROBERT DEAN WAGGONER                                      APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND GOODWINE, JUDGES.

CLAYTON, CHIEF JUDGE:  Christina E. Waggoner appeals from the Jefferson

Family Court's order denying her motion to dismiss and its entry of a domestic

violence order ("DVO") against her.  Christina does not challenge the evidentiary

basis of the DVO.  Her sole argument on appeal concerns the family court's refusal

to enforce a purported agreement she had with Robert Dean Waggoner to dismiss

the underlying petition. Having reviewed the record and the applicable law, we affirm.

The Waggoners had been married for over thirty years when Robert filed a petition for dissolution of marriage on March 24, 2021. He moved out of the marital residence but returned periodically to retrieve tools and other materials necessary for his contracting business from an outbuilding behind the house. On June 2, 2021, Christina called the police to report that Robert was on the property and that he was not allowed to be there. There was no legal basis for this latter contention. When the police officers arrived, they spoke to Robert, who was collecting some of his belongings from the garage. He showed the officers harassing text and Facebook messages Christina had been sending him. In the presence of the police officers, Christina punched the driver's side of the vehicle where Robert was sitting. She then picked up an axe and began hitting the front passenger side window of the vehicle, causing a substantial danger of physical injury to Robert. The police officers arrested Christina and charged her with wanton endangerment in the second degree and harassing communications. At her arraignment, the district court entered a no-contact order and Christina moved out of the marital residence.

Robert filed a petition for a DVO against Christina on the day the incident at the house occurred. The case was heard before the same trial judge

who was presiding over the dissolution case. An emergency protective order ("EPO") was entered on the same date and the case was set for a DVO hearing on June 15, 2021.

In the days preceding that hearing, attorneys for the Waggoners reached a tentative agreement which would allow Christina to move back into the house and Robert to access the property to retrieve his work materials. It provided for the entry of an agreed order in the dissolution case dismissing the DVO petition and for mediation to resolve the other issues.

The case was called on the docket as scheduled on June 15, 2021, via Zoom. Christina appeared with counsel; Robert and his counsel were not present. Christina's counsel told the court that opposing counsel was going to circulate an agreed order in the dissolution case that would include a provision dismissing the pending DVO action. He told the court:

> I can tell you what we're going to do and when [Robert's attorney] calls in, you can run it by him and if it's okay then great. We're going to pass it a week, he's going to draft an agreed order in the divorce case . . . what happened was, my client was living in the house, because of the EPO, she's out of her own home . . . and [Robert's attorney] explained that [Robert] doesn't want [Christina] out of the house, so we're going to convert the EPO to a No Unlawful Contact, continue it . . . what's your next day?

The family court tentatively scheduled a hearing for the next motion hour. Christina's attorney continued:

And then [Robert's attorney] is going to tender an agreed order to me that will say that, in the divorce case, which is already pending and I have already responded, and as a matter of fact we can agree today we're going to go to Vish or Bowles for mediation and get these folks to mediation quickly, we're contacting their offices, and then the agreed order in the divorce case will simply state that there will be no unlawful contact between the parties. From his point of view, [Robert] has a small remodeling [business] . . . he has tools and things like that stored at the house, and we're going to agree that he can come to the house twice a week for tools and supplies and drop things off and switch things out, it's in the shed and not in the house, so he'll stay out of the house, he'll go in the shed and give her notice of that so we don't have conflict . . . . We'll tender that within the week, and we can get that in to you before Tuesday, we can probably remand and dismiss this.

The family court replied: "Okay perfect, well I've made some notes here."

About half an hour later, Robert's attorney appeared, and the court apprised him of what Christina's attorney had said:

[H]e had said that you all had agreed to try to circulate an agreed order on the circuit divorce action and that we were going to pass the DVO petition for one week . . . that'll be next Tuesday[.] Of course, my case specialist will be in touch . . . and we can try to pinpoint a time slot that . . . . If the agreed order is taken care of, you all can just let her know and there won't be a need to appear.

Robert's attorney replied, "It is our intention to have that done prior to the call of the case next week."

The family court wrote on the docket sheet: "pass 1 wk to 6-29-2021 @ 8:30 a.m. Mutual NUC [no unlawful contact] A.O. [agreed order] to be circulated b/w parties' counsel/parties on divorce case to get [Christina] back in her house + to allow [Robert] to get tools . . . mediation to occur w/ Vish or Bowles."

When the parties next appeared before the court via Zoom on June 29, 2021, Robert's attorney informed the court that Robert had changed his mind about proceeding with the agreement because in the interim Christina had emptied their joint bank accounts.

Christina's counsel responded:

So, yeah, we were on the call last time and we had agreed that we were gonna do an order, a civil order, in the divorce case . . . and no contact. My client really has no place to live right now because this happen[ed] at her home, their home I should say, where she'd been staying. He had not been staying there so she's out of her home and has been out of her home since this happened. My hope was to get her back in the house, I think she's living with her mom right now, but in any event we agreed we were going to do that and go to mediation. These financial issues have nothing to do with the agreement we made in this case to resolve the EPO and get these people moving forward again with their lives. There's also a criminal case pending, so there's a no-contact order out of that . . . .

Robert's attorney responded:

We never said we would not continue to enter into – that we would not go ahead, but it certainly makes it more

-5-

difficult from my perspective with the day after we extended the offer to resolve this with a civil order, she's plundering the bank accounts by my client's representations. So . . . that's kind of the wrench in the works. I'm not saying we wouldn't do it, although Mr. Waggoner is substantially more reticent to do it. . . . I don't think we have an agreement, because it hasn't been memorialized. We were going to do an agreed order, but that was never signed. I'm not opposed to attempting that if [Christina's counsel] wants to and I'm ready to go to mediation as well, or we can get a continuance and have the hearing at a later date.

The family court passed the case for a hearing. At that hearing, which was also held via Zoom, Robert was present without counsel and told the court that he did not agree with the proposed order "at all," explaining, "The problem is that she has threatened to kill me and burn the house down multiple times and I don't feel safe being on the property with her and I need to be there because of my business. I just don't have a choice."

Christina filed a motion to dismiss the DVO case and to enforce the settlement agreement. After briefing, the family court denied the motion on the grounds that the agreement was not adopted by both attorneys expressly on the record and that circumstances had changed following June 15, 2021. It thereafter held a hearing on Robert's DVO petition and entered a DVO on September 14, 2021. This appeal by Christina followed.

Christina argues that the parties had a valid and enforceable agreement to resolve the DVO case and the family court erred in denying the motion to dismiss and subsequently granting the DVO.

"[T]he issue of contract formation . . . is a question of law to be reviewed *de novo*, where, as here, the relevant facts are undisputed." *Baumann Paper Co., Inc. v. Holland*, 554 S.W.3d 845, 848 (Ky. 2018), *as modified on denial of reh'g* (Sep. 27, 2018). "The fundamental elements of a valid contract are offer and acceptance, full and complete terms, and consideration. For the terms to be considered complete they must be definite and certain and must set forth the promises of performance to be rendered by each party." *Energy Home, Div. of Southern Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (internal quotation marks and citations omitted).

Christina argues that their settlement agreement was in accordance with Kentucky Revised Statutes ("KRS") 403.180(1), which provides as follows:

> To promote amicable settlement of disputes between parties to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a written separation agreement containing provisions for maintenance of either of them, disposition of any property owned by either of them, and custody, support and visitation of their children.

KRS 403.180(1). The requirement that the agreement be written may be satisfied if an oral agreement is stated on the record in the presence of the judge or

transcribed by a court reporter and made part of the record. *Calloway v. Calloway*, 707 S.W.2d 789, 791 (Ky. App. 1986).

Christina contends that she and Robert had an enforceable oral agreement that was read into the record and confirmed by the family court in its written order of June 15, 2021. It is described in the record as an order of continuance and provides, as stated above: "Mutual NUC [no unlawful contact] A.O. [agreed order] to be circulated b/w parties' counsel/parties on divorce case to get [Christina] back in her house + to allow [Robert] to get tools . . . mediation to occur w/ Vish or Bowles." Christina contends that this notation was sufficient to meet the standard for an enforceable oral settlement agreement as outlined in an unpublished opinion of this Court, *Beams v. New Hart County Health Care, LLC*, No. 2012-CA-000581-MR, 2013 WL 1868076 (Ky. App. May 3, 2013). In essence, "[w]here all the substantial terms of a contract have been agreed on and there is nothing left for future settlement, the fact alone that the parties contemplated execution of a formal instrument as a convenient memorial or definitive record of the agreement does not leave the transaction incomplete and without binding force in the absence of a positive agreement that it should not be binding until so executed." *Id.* at *3 (quoting *Dohrman v. Sullivan*, 310 Ky. 463, [467,] 220 S.W.2d 973, 975 (1949)).

In *Beams*, the appellant brought a personal injury lawsuit against the Hart County Health Care Center and the parties reached a confidential verbal settlement agreement. This Court held that the oral settlement was enforceable because the parties had conducted protracted settlement talks in the presence of the judge and each stated unequivocally their verbal assent to the agreement in open court. The opinion sets forth the following exchange between the judge, the parties, and counsel:

> Judge Seay: We are on the record . . . and after negotiation the parties have, uh, agreed to a settlement, the terms of which are confidential. With the parties, the plaintiff is present in person, and let me ask you on the record Ms. Beams is that your agreement that we discussed before we went on the record there, is that your agreement?
>
> Ms. Beams: Do what sir?
>
> Judge Seay: Have we reached an agreement in the case as the attorneys recited a few moments ago?
>
> Ms. Beams: Yes.
>
> Judge Seay: All right. And Mr. Chlarson [counsel for Hart County Health Care] is that your agreement also on behalf of the Defendant?
>
> Mr. Chlarson: Yes, Judge.
>
> Judge Seay: Then the Court will approve that settlement then and will remove the case from the jury trial docket of April the 25th.

*Beams*, 2013 WL 1868076, at *2.

No comparable exchange took place in this case. The family court was informed by Christina's attorney that the parties had arrived at a potential settlement, and he familiarized the court with its main objectives. The agreement was presented to the family court as a work in progress, not as a *fait accompli*. The exact terms of the agreement were never read into the record. The attorneys and parties were not present at the same time and the court had no opportunity to ask the parties if they agreed to the terms of the settlement. The language used by the family court and the attorneys in reference to the agreement is replete with conditional and contingent terms. Although the conversation was optimistic at the June 15, 2021, hearing, a possibility remained that the agreement would not be finalized.

We are well aware that "[i]n the administration of justice and the prompt dispatch of business, courts must and do act upon the statements of counsel and upon the stipulations of parties to pending causes." *Calloway*, 707 S.W.2d at 791 (citation omitted). The fact that the family court wrote a summary on the docket sheet of the terms of the potential settlement as outlined by Christina's attorney was simply not sufficient to create an agreement binding upon the parties.

For the foregoing reasons, the Jefferson Family Court's orders denying the motion to dismiss and granting the DVO are affirmed.

ALL CONCUR.


BRIEF FOR APPELLANT:                BRIEF FOR APPELLEE:

David B. Mour                       Timothy Denison
Louisville, Kentucky                Louisville, Kentucky