Hollerbach & May Contract Co. v. Wilkins.

---

CASE 6.—ACTION BY J. ARCH WILKINS AGAINST THE HOLLERBACH & MAY CONTRACT COMPANY FOR A BREACH OF CONTRACT.—October 22.

# Hollerbach & May Contract Co. v. Wilkins

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Judgment for plaintiff, defendant appeals—Affirmed.

1. Contracts—Completion—Reduction to Writing.—Where all the terms of a contract, by which plaintiff agreed to furnish defendant a specified quantity of broken stone at a certain price per cubic yard, were agreed to, and the contract was dictated to defendant's stenographer with instruction to write

out duplicates, and send them by mail to plaintiff, who was to sign both and return one to defendant, the contract was complete and enforceable, though not reduced to writing and delivered before defendant's breach.

2. Contracts—Conditions—Failure to Comply.—Where defendant, sued for breach of contract, did not deny that, if there was a contract, it did not allow time for the execution by plaintiff of a bond to secure performance before defendant broke the contract, plaintiff's failure to furnish a bond was no defense.

3. Damages—Contract—Breach—Duty to Reduce Damages.— Plaintiff, a quarryman, contracted to furnish defendant a certain quantity of broken stone at a specified price per cubic yard. Held, That, on defendant's breach of such contract, plaintiff was entitled to recover profits he would have made by furnishing the stone, and was not required to sell the stone in the market and recover the difference between the contract price and market price.

4. Contracts—Breach—Justification.—Where plaintiff and defendant's manager had agreed on terms of a contract by which plaintiff was to furnish broken stone to defendant, and, after dictating the contract to defendant's stenographer, defendant's manager visited plaintiff's quarries and promised that the written contract should be forwarded at once, he was not justified in refusing to comply therewith by the stenographer's subsequent statement to him that plaintiff had previously said he would not sign the contract unless a certain modification was inserted in it.

5. Trial—Instructions—Assumed Facts.—An instruction that if the jury believed that plaintiff and defendant made a contract as pleaded in the petition, and defendant broke it, while plaintiff was ready and willing to execute it, then plaintiff was entitled to damages, was not objectionable as assuming the existence of the contract.

6. Damages—Duty to Minimize.—Those complaining of violations of contract are generally required to minimize their damages as much as the exercise of reasonable diligence will accomplish without sacrificing a substantial right.

7. Contracts—Breach—Offer of Performance.—Where defendant informed plaintiff of its election not to take stone contracted for, plaintiff, under the rule that the law does not require the doing of a useless act, was not required to make an express tender of performance.

M. M. LOGAN and ORA E. HAZELIP for appellant.

### OUR CONTENTION IS

1. That the evidence fails to show that there was any contract, or that it was intended that the parties should be bound until the contract was reduced to writing and signed and a bond executed by appellee for the faithful performance of his contract in the event a contract should be made between them.

2. That the court erred in overruling appellant's motion to require appellee to elect which cause of action he would prosecute and in overruling the motion to strike out parts of appellee's petition.

3. That the court erred in overruling the demurrer to appellee's petition because said petition did not allege that appellee offered to perform the work required by the terms of the alleged contract. That the court erred in refusing to permit appellant to file amended answer and in striking out that part of appellant's answer which set up the amount it was compelled to pay for stone that it had attempted to buy from appellee.

4. That the court erred in refusing to give a peremptory instruction to find for appellant.

5. That the court erred in giving instruction No. 1 in that he assumed in said instruction that there was a contract; also in failing to require the jury to believe that defendant offered to perform the alleged contract and in authorizing the jury to find for appellee if the contract was for about 4,000 yards of cubic stone.

6. That the court erred in giving instruction No. 3 on the measures of damages.

7. That the court erred in refusing to give instruction "A" offered by appellant.

8. That the verdict is palpably against the weight of the evidence.

THOMAS W. THOMAS for appellee.

WILKINS & MILLIGAN and JOHN .M. LOGAN of counsel.

We submit that the contract not being in writing and being proved from oral evidence, and there being a conflict of testimony as to the amount of stone to be furnished under the contract, the jury had the right to weigh the evidence and find that the contract was for a less amount of stone than plaintiff claimed, and base

the amount of recovery on said sum. Otherwise there was no
necessity of introducing any evidence as to the amount of stone
called for in the contract. The contract being oral, its terms
were open to dispute by evidence in every particular and the
decision of the dispute was submitted to the jury, and their verdict
should be sustained.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

This is an action for the breach of an alleged
contract between appellee and appellant for the sale
and delivery by the former to the latter of 4,000 cubic
yards of broken rock to be used in constructing lock
and dam No. 6 in Green river. Appellee alleged in
his petition that appellant, a corporation, had secured
the contract from the United States government to
construct the lock and dam in question, and that in
the construction of this work is needed about 4,000
cubic yards of broken stone of dimensions not less
than one-half cubic foot nor larger than what a man
could handle; that he entered into a contract with
appellant by which he undertook to furnish it with
the stone, and it agreed to pay him therefor 60 cents
per cubic yard delivered on barges in Green river;
that, after making this contract with him, the appel-
lant wilfully and arbitrarily broke it, and refused to
permit him to go on with it. The damages were laid
in the petition at $1,250, and were said therein to
consist of $250 expended in opening up the quarry in
order to get out the stone, and $1,000 which the ap-
pellee could have made in profit had he been allowed
to execute his contract as made with appellant. The
appellant in its answer denied the existence of the
contract, and this was the real issue between the
parties, although there are several questions dis-

cussed in the briefs. A trial of the case resulted in a verdict in favor of appellee for $500 and from the judgment based upon that verdict this appeal is prosecuted. The evidence shows without question that the appellant agreed with the appellee for the purchase by it of the 4,000 cubic yards of broken stone at the agreed price of 60 cents per cubic yard. This contract was not only agreed to in all its terms, but was dictated to the stenographer of appellant, with instructions to him to write it out in duplicate and send by mail to appellee, who was to sign both and return one copy to appellant. Several days after this was done, A. Hollerbach, who seems to have been the active manager of appellant company, went up to appellee's quarries from which the rock was to be taken, and inspected them with appellee. While there, appellee asked Hollerbach why the written contracts had not been sent down as agreed upon, whereupon Hollerbach expressed surprise that he had not received them, and said: "You will get them by Tuesday" (it being then Sunday). Hollerbach left the quarries, and went on to his place of business, and appellee heard nothing further for several days, whereupon he wrote to appellant, inquiring why the contracts had not been sent down, and received a letter in reply that appellant had made other arrangements to get the stone it needed. Appellee then instituted this action.

The mere fact that the oral contract was to be afterwards reduced to writing does not render it unenforceable. Bell v. Offutt, 10 Bush, 632; Mattingly v. Springfield F. & M. Ins. Co., 120 Ky. 768, 26 Ky. Law Rep. 1247, 83 S. W. 577. If the minds of the parties had met, and nothing else was to be agreed upon, the mere fact that the parties were to reduce

their understanding to writing does not militate against the right of either to sue for a breach of the oral agreement. The testimony introduced by plain-tiff (appellee) fully sustains his contention, and this is in no substantial respect disputed or contradicted by the appellant, or its witnesses, except that it alleged and undertook to prove that, after the con-tract was agreed on between appellee and Hollerbach, appellee said to the stenographer that he wished a different clause inserted as to the dimensions of the stone, and that, if this was not done, he would not sign it. This was denied by appellee, and that ques-tion was submitted to the jury in the instructions of the court, and found adversely to appellant.

Nor do we think the court erred in not submitting to the jury the question as to whether or not appellee had prepared and tendered a bond with surety con-ditioned for the faithful performance of the contract. Appellant's evidence tended to show that a bond was to be given, and, while appellee denied that there was such an agreement, he admitted that he sometimes gave bond for the prompt performance of his con-tracts, and would have had no objection to giving bond for the performance of the contract under con-sideration. Appellant did not deny that it agreed upon the terms of the contract as alleged by appellee, or that these terms were dictated to the stenographer and taken down by him in shorthand; but it insists that there never was a contract, or, if there was one, it was rescinded by the demand of the appellee for the modification thereof. It does not deny that it made arrangements for the obtention of the desired amount of broken stone from another party, and that after it was impossible for it to carry out its contract with appellee. In other words, it does not dispute

that, if there was a contract between it and appellee, it broke it. Assuming this to be true, it was entirely immaterial whether there was a bond executed. Appellant did not allow the time for the execution of the bond to arrive, because, before that time, it made a contract with another party for the stone, and so notified the appellee.

We think the court correctly held that the question between the parties was whether or not there was a contract as claimed by appellee; and, if so, the amount of damages appellee sustained by reason of the breach. Hollerbach's own testimony established appellee's contention of the existence of the contract, and his only excuse for the breach was that his stenographer had told him when he came back from the quarries that appellee had said to him (the stenographer) that, unless there was a modifying clause inserted in the contract, he would not sign it. Being told this, he says he immediately, without notifying the appellee, made a contract with a different party for supplying the stone that appellant needed. Hollerbach's position in this matter is not a very enviable one. He knew that what his stenographer told him was not correct, because he had been at the quarries with appellee since the supposed conversation between the stenographer and appellee had taken place, and he knew that appellee was preparing to go on with the contract, and had there asked him why the written contract had not been sent to him, and he knew that he had promised appellee that the writing should go to him at least by the following Tuesday, and yet, knowing that appellee considered that he had a contract with appellant, and was going on at some outlay to prepare to execute it, he, without any notice to appellee, made a contract, as said before,

with another party; and, as he states, at a higher price.

We do not think the first instruction of the court assumes that there was a contract between appellant and appellee. If this were true, it would be erron-eous, because the existence of the contract was the real issue between the parties. Instead of assuming the existence of the disputed contract, the court expressly told the jury that if they believed from the evidence that the appellee and appellant made a contract as set out in the petition, and appellant broke it, and that the appellee was ready and willing at all times to execute it, then he was entitled to damages from the appellant.

The court did not err in not instructing the jury that it was the duty of the appellee, even if there was a breach of the contract, to use reasonable diligence to sell the stone contracted for to other parties. The principle for which counsel for appellant contend has no application to a contract like the one under discussion. It is true, where there is a contract for personal services, and there is a breach, the party whose services are to be engaged may not sit down and supinely permit the amount of his damages to grow. It is his duty to seek employment elsewhere, and the other party is only liable to the extent of the injury after the exercise of ordinary diligence by the complainant to obtain other employment still leaves him a sufferer by reason of the breach. In the case in hand the appellee had a rock quarry, and, although it might be true that he could have sold 4,000 cubic yards of rock to another party, that would not have diminished his damages in not being allowed to carry out his contract with appellant, because he was entitled, if he could, to sell all the rock in

his quarry; and it in no wise minimized the damages he may have sustained by the breach of appellant's contract that he might, perchance, have sold 4,000 yards of broken rock to some one else. This is quite different from a contract for personal services. There the contract cannot be performed for two different parties, and, when the employer refuses to carry out his contract for the personal services of the servant, the latter must look for another employer, and thus reduce the damages, arising from the breach, as much as possible. We do not mean to be understood as limiting the application of the principle of avoidance of damages to breaches of contracts for personal service; on the contrary, the rule is of much broader application, and it would, perhaps, not be going too far to say that the duty of those complaining of violations of contracts to minimize their damages as much as the exercise of reasonable diligence will accomplish is the general rule appertaining to the right to recover damages therefor. The complainant should reduce his damages whenever the principle can be applied without sacrificing any substantial right. A fair illustration of the general application of the rule may be found in the supposition that the breach of the contract under discussion had been by appellee's refusing to deliver to appellant the stone contracted for. It would in the supposed case have been the duty of appellant to go out into the market and buy the stone, and it could only hold appellee liable for the difference between the contract price and what it had to pay for the stone on the market. This, from the very nature of the case, would cover all the damage it sustained by the breach of the contract. But the same principle is not applicable to the breach of contract complained of in this record. Appellee was

entitled to enjoy the benefit of the profits of his contract with appellant, and, if he could have made as beneficial a contract with another, he was entitled to the benefits of that also. In other words, he was entitled to carry forward as many such contracts as he could make, and, if he succeeded in making more than one, he was entitled to both profits. Receiving the profits of one such contract would not tend to recoup his loss by reason of the breach of another. Sedgwick on Damages (8th Ed.) section 608. It was not necessary for the appellee to expressly offer to go on with the contract after the breach. He was informed by the appellant that it had contracted for the stone from another party, and it was therefore useless for him to make a formal tender of the stone to it. The law does not require the doing of a useless act.

Upon the whole case no substantial error was committed against appellant, and the judgment is therefore affirmed.