## PURVIS & BERTRAM et al. v. SHAW.

### No. 14403.

Court of Civil Appeals of Texas.
Fort Worth.

July 10, 1942.

Rehearing Denied Sept. 11, 1942.

L. J. Wardlaw and Ira Butler, both of Fort Worth, for appellants.

Robert C. Pepper, of Fort Worth, for appellee.

SPEER, Justice.

W. H. Shaw instituted this suit as plaintiff, against defendants C. H. Bertram and J. M. Purvis, as individuals and as partners composing the firm of Purvis & Bertram, to recover damages for the breach by defendants of an alleged contract by which plaintiff claims that he and defendants entered into an agreement for the furnishing by plaintiff of sand and gravel to enable defendants to construct two concrete bridges in Tom Green County, Texas.

The parties will bear the same designation by us as they carried in the trial court. It may be added that W. H. Shaw, Jr., was made a party plaintiff, but he filed a disclaimer and went out of the case. It will be unnecessary to give that matter any further attention.

At a jury trial, the verdict was in response to special issues favorable to plain-

tiff, and judgment was entered on the verdict, from which defendants have appealed.

Defendants present seven points upon which they rely for reversal. The first point complains of the action of the trial court in overruling their motion for judgment non obstante veredicto. The basis of the motion was to disregard the whole verdict for the reason it would have been proper for the court to have instructed a verdict for defendants, under the provisions of Article 2211, R.C.S., Vernon's Ann.Civ.St. art. 2211.

As we view the record, the court properly overruled the motion. Defendants contend that plaintiff's cause of action is controlled by the principle involved in a sale by one of a specific article of personal property and the purchaser declines to accept when tendered, and thereby breaches his contract of purchase, relegating the seller to an election between one of three remedies, (1) to hold the article (sand and gravel in this case) as the property of the purchaser and sue for the contract price, (2) retain the sand and gravel as his own and sue for the difference between the contract price and the market value of the sand and gravel at the date fixed for delivery, or (3) plaintiff could have sold the sand and gravel at a fair sale and sued for deficiency, if any. The general rule contended for is supported by 37 Tex.Jur., § 272, page 601, but that rule is not applicable to the facts and circumstances of this case. Defendants cite in support of the point, Xray Gas Co. v. Lone Star Gas Co., Tex.Civ.App., 139 S.W.2d 142, 154 where the court lays down the rule as taken from 37 Tex.Jur., supra. The Supreme Court has reversed the Court of Civil Appeals' holding, 164 S.W.2d 504, but did not discuss the point relied upon by defendants here. Evidently that court did not consider the principle applicable in that case. A discussion of the remaining points by us will show further reasons why we think no instructed verdict should have been given for defendants, consequently no judgment should have been entered notwithstanding the verdict.

Points 2, 3, 4, 6 and 7 all complain in some form or other of the submission of special issue three. The several contentions are based upon the theory that plaintiff's cause of action was of such a nature that special issue No. 3 did not present the proper measure of damages in this case, even to concede that defendants had breached the contract.

The pleadings upon which this case was tried, to our minds, present an action by plaintiff in which he asserts that the contract between the parties was that defendants were bidding on the construction of two concrete bridges in Tom Green County and asked plaintiff to bid on furnishing the sand and gravel for the job; that plaintiff agreed to furnish the sand and gravel for $2.50 per concrete yard; the amount of material to be determined by the engineer when the work was completed; that defendants accepted said proposition, provided they got the job; that on November 15, 1935, the contract was awarded by the county to defendants and thereby defendants promised to pay to plaintiff the price per concrete yard so agreed upon between them. It was alleged plaintiff was engaged in the sand and gravel business in said county and had large quantities of such material available to enable him to carry out his contract. That he was ready, able and willing at all times to perform the contract. That defendants failed and refused to accept the materials from plaintiff and wholly breached said contract; that there were used in the construction of the bridges 2,-046 concrete yards of sand and gravel; that but for the breach of the contract by defendants plaintiff would have made $2,455.-20 profit on the performance of the contract, and prayed for judgment in that amount.

Defendants demurred to and denied generally all allegations made by plaintiff, and specially denied that they at any time made such contract with plaintiff as claimed by him, but that the bid or offer made by plaintiff was made to defendants for their consideration; that they never at any time accepted same or obligated themselves to purchase the sand and gravel from him.

Much of a large transcription of the testimony is devoted to the contentions of the respective parties as to the facts about whether the parties ever entered into a contract. The testimony adduced by plaintiff indicates that the contract was made; the testimony offered by defendants is all to the contrary. The jury verdict resolved the disputed points against defendants. There is ample testimony to support the verdict. Three special issues

were submitted by the court. Defendants did not request any others. Those given and the answers reflect: (1) Defendants agreed in November, 1935, to purchase from plaintiff all of the sand and gravel to be used in the construction of the two bridges, (2) plaintiff was ready, able and willing to furnish to defendants all of the sand and gravel of the quality and quantity and at the times required, and (3) "What do you find from a preponderance of the evidence it would have cost plaintiff, W. H. Shaw, to acquire, prepare and deliver on the job to defendants, Purvis and Bertram, for use in the construction of the two bridges in question, the sand and gravel required to make up 2046 concrete yards?" The answer was, "$2557.50."

There is a stipulation in the record that there were 2,046 concrete yards in the two structures. The testimony of plaintiff shows that on the day the contract was let to defendants the parties conferred and that Purvis said to plaintiff, in effect, that his firm and plaintiff had the job. Purvis denies making the statement. Plaintiff's son and a former employee of plaintiff testified to facts corroborative of plaintiff's contention. Next day after the letting at San Angelo, plaintiff wired defendants that he considered he had the contract to furnish the sand and gravel and was moving his machinery in place to begin getting the material ready. Defendants wired back denying that plaintiff had the contract, but that they would be glad to confer with him in regard to his furnishing the material. Plaintiff began getting the sand and gravel out and processing it ready for delivery. Plaintiff had access to large quantities of the material to be taken from the bed of the Concho River by paying a small fee to the State. He handled many contracts over a period of about 35 years at that place and the quantity of sand and gravel was almost unlimited; some witnesses referred to it as hundreds of thousands of yards. Plaintiff knew defendants would use it slowly and did not take out and process all the material but shortly after he began operations, had about 1,300 yards ready for delivery before defendants began actual construction about February 1, 1936. Plaintiff tendered the material but it was refused by defendants, they having purchased from another party. Plaintiff lost his alleged contract and the profit he claims he would have made if permitted to carry it out. After defendants had refused to permit plaintiff to deliver the material, he sold a part of the sand and gravel he had prepared for that particular job to others in course of his business as a dealer in those materials; over half of it washed away.

There is testimony here to indicate that in performing his asserted contract it was necessary for plaintiff to pay to the State a small fee for the privilege of taking sand and gravel from the bed of the river, even though his own land was immediately adjacent to the river banks, and if he took it from other parts of the river he had to pay to the adjacent land owner what he called a trespass fee. When the material was located he had to haul it out to his plant where it was processed by washing and screening to procure that part necessary to meet specifications, and then be hauled to the place of use. There was used on the job 3,370 cubic yards of sand and gravel which after mixing comprised the 2,046 "concrete yards", stipulated as correct.

■ We do not think plaintiff's right of recovery is controlled by the principle involved in cases where one contracts to sell personal property and the purchaser declines to take it when tendered, leaving the specific article in the hands of the seller for resale to another; nor is it such a case as where one obligates himself to perform a personal service for a given price and is prevented from performance by the employer. This contract embraces a much larger scope; it was one involving outside considerations and risks by plaintiff, such as procurement of labor to recover and process the sand and gravel, the wear and tear of his machinery, the use of material by defendants and a hazard of accidents or mistakes of defendants in utilizing properly the raw material when furnished by plaintiff, so as to eventually get it in to "concrete yards", by which plaintiff was to be paid. Our courts have often recognized the rights of parties to recover profits resulting from breached contracts. 7 Tex.Jur., page 635, §§ 68 and 69. The rule there announced is to the effect that when one is prevented from performing a contract by a breach by the other, the measure of damages is the amount of profit the former would have made if permitted to perform; this is arrived at by deducting the cost of performance from the contract price, as was done in the instant case. Many early cases in the state did not sanc-

tion a recovery of profits for a breach of contract, because they were too speculative, but that rule has long since been repudiated by our Supreme Court in such cases as Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097, and cases cited.

Applicable to the facts in this case is Jefferson & N. W. Ry. Co. v. Dreeson, 43 Tex.Civ.App. 282, 96 S.W. 63, writ denied. In that case plaintiff contracted to clear certain grounds and grade parts of it for use by the railway company. Plaintiff was prevented from performing his contract by a breach thereof by defendant. It was contended by defendant that he could have procured other employment equally remunerative and have prevented the alleged loss involved. Court held in effect that the rule contended for by the railway company did not apply because plaintiff had contracted to do a thing which he could have performed through employees and was entitled to recover the profits which would have been earned had he not been prevented by the wrongful acts of the defendant.

In the case before us, plaintiff is shown to have been in this business for many years and that his materials were procured as above indicated and processed by employees by means of the machinery and equipment furnished by plaintiff. We may fairly assume that plaintiff was in a position at all times to carry out the terms of his asserted contract and at the same time make and perform other contracts of a similar nature during the time this one was being executed. Certainly the fact that he had other contracts in process of performance would not relieve defendants of damages resulting from their breach of their contract with plaintiff. In this connection we think the rule announced in Hollerbach & May Contract Co. v. Wilkins, 130 Ky. 51, 112 S.W. 1126, is applicable here. In that case the owner of a rock quarry contracted to sell so much broken rock to another and the latter breached his contract of purchase. It was held that defendant could not escape payment of profits plaintiff would have made by full performance, because plaintiff sold or could have sold the same materials contracted to defendant to another customer of plaintiff; that plaintiff was entitled to recover such profits from defendant and if he could make another contract with some other person he was entitled to the benefits of both contracts. It was held in the cited case that plaintiff could carry on as many contracts simultaneously as he was in a position to perform and reap the benefits of all. The points raising objections to the submission of Special Issue No. 3 as set out by defendants must be overruled.

Fifth point does not specifically raise the question of presenting the wrong measure of damages by submitting special issue 3, but complains because the court rendered judgment against defendants upon the undisputed evidence that plaintiff sold a portion of the sand and gravel prepared by him for the performance of this contract, to other persons than defendants, and that there was a ready market for all such material which he would have used if he had performed his contract with defendants. As a matter of fact the contention made under this point is just another way of presenting defendants' objections to special issue No. 3, as a basis for plaintiff's recovery, and what we have already said must be considered in overruling point five.

In the interest of clarity, we perhaps should note that while plaintiff was awarded a recovery for profits he would have earned if permitted to perform the contract, the amount of recovery was less than the value of the stipulated 2,046 concrete yards at $2.50 per concrete yard, after deducting the amount found by the jury as necessary expense of performance, but this was occasioned by plaintiff having pleaded that his profit would have been $1.20 per concrete yard. The judgment was limited to that allegation, although the verdict would have produced a different figure.

We see no error requiring a reversal of the judgment below and it is therefore affirmed.