**ISLAND TRASHMOVAL SERVICES, INC., Plaintiff**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Defendant**

Civil No. 563/1986

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 6, 1988

BERNARD M. VANSLUYTMAN, ESQ., St. Thomas, V.I., *for plaintiff*

KARL R. PERCELL, ESQ., Assistant Attorney General (Department of Justice), St. Thomas, V.I., *for defendant*

CHRISTIAN, *Senior Sitting Judge*

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion of the Plaintiff for Summary Judgment made on January 20, 1987, and renewed on August 20, 1987. The Motion will be granted in part and denied in part.

## I. FACTS

On or about February 21, 1985, the Virgin Islands Department of Property and Procurement, an executive department of defendant (DPP), issued a public Request for Proposal, RFP No. 0006-85, to obtain bid proposals to supply the Virgin Islands Department of Public Works, St. Thomas, another executive department of defendant (DPW), with private Roll-On Roll-Off Garbage Collection Service. Plaintiff lawfully responded to this Request with its offer and bid on March 15, 1985. On May 30, 1985, the defendant, through DPP, accepted plaintiff's bid and awarded plaintiff the contract for aforesaid service, namely, Multiple Award Supply Contract, Negotiated No. SC-36BTT-85 (ITSI), (MASC), as further clarified by letter dated May 30, 1985, directed to Mr. Gaylord Sprauve, plaintiff's president, by Honorable Herman E. Richardson, DPP's Commissioner. The contract papers thus far committed plaintiff to make three pick-ups per week at each of

three different locations—Mandahl, Smith Bay, and Fort Mylner—at $119.00 per pick-up from May 30, 1985, through September 30, 1985. While in Paragraph 1 of said letter giving the specifics of said contract, Commissioner Richardson said, "[t]he contract may be extended as needed for six-month periods at the same price up to September 30, 1986," Paragraph 4(b) of the MASC provided that the contract shall not be extended except on written authorization of the Government and acceptance thereof by the contractor. Not only was there no such written extension of the contract, but the DPW did not even permit plaintiff to perform the services required during the first term of the contract, despite repeated requests of plaintiff to permit it to do so, and notwithstanding a written Order issued by Commissioner Richardson on July 11, 1985, to Honorable Cecil George, DPW's Commissioner, to cease and desist from preventing plaintiff from performing the services agreed upon in the contract, "since continuation [of such conduct] will only jeopardize the Government for a lawsuit." Governor Juan Luis was then written on June 9, 1986, by plaintiff for assistance, but to no avail.

This Motion is based on affidavit of plaintiff in which it deposes and says, inter alia, that on February 21, 1985, the Virgin Islands Department of Property and Procurement issued a public Request for Proposal-Negotiation, RFP No. 0006-85; that said Request was issued by Order to obtain bid proposals to supply the Virgin Islands Department of Public Works, St. Thomas, with a private Roll-on Roll-off Garbage Collection Service; that plaintiff lawfully responded to said Request with its offer and bid on or about March 15, 1985; that on May 30, 1985, defendant, through its Department of Property and Procurement, lawfully accepted plaintiff's bid and awarded the contract for the above-described service, namely, Negotiated No. SC-36 BTT-85 (ITSI) (MASC); that the terms of the contract were that in consideration of plaintiff's performance in accordance with the contract, plaintiff was to be paid $119.00 per garbage bin pick-up; that the bins were located at Mandahl, Smith Bay, and Fort Mylner; and that the bin pick-ups were to take place on Mondays, Wednesdays, and Fridays between the period May 30, 1985, through September 30, 1985. It was further provided that the contract could have been extended for [two] six-month periods from September 30, 1985, to September 30, 1986. Defendant to this date has not only not filed a countering affidavit setting forth specific facts showing that there is at least one genuine issue of fact for

trial, but defendant has not even bothered to answer the plaintiff's Motion. Thus, a period of seventeen months has elapsed without a murmur from the respondent to the Motion for Summary Judgment.

## II. DISCUSSION

Pursuant to Rule 56(a), Federal Rules of Civil Procedure:

A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

Rule 56(c) provides:

. . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages. Id.

■ The Court finds no genuine issue of fact as to the liability of the Government to pay such damages as plaintiff may prove it suffered as a proximate result of the conduct of defendant's Department of Public Works preventing plaintiff from performing its contract from May 30, 1985, through September 30, 1985. The declarations made in plaintiff's affidavit in support of its Motion and defendant's failure to file any contravening affidavit thereto provide a clear basis for this finding. "When a Motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials in his pleading, but his response by affidavits or otherwise as provided in the Rule must set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, *shall* be entered against him." Fed. R. Civ. P. 56(e). For 17 months after the Motion was made, defendant has made no answer with or without affidavit.

370

■ But plaintiff asks for summary judgment also on the issue of liability for the period October 1, 1985, to September 30, 1986. The terms of the contract mentioned above clearly show that plaintiff is not entitled to damages for this additional period. The contract is clear and unambiguous that while the defendant might extend it in writing with the approval of the plaintiff, defendant was under no obligation to do so. And defendant has not done so. Plaintiff argues that if the Government had permitted performance of the initial term, since the need for the service continues, and the service is presently being performed by private garbage collection, plaintiff is entitled to the benefit of the extension. We find no merit in this argument. While at best this result is likely, the express language of the contract clearly establishes that likelihood is not enough to create a legal basis for a finding of liability of the defendant for this period.

■ While we will grant partial summary judgment against the defendant for liability for the period of the contract May 30 to September 30, 1985, we deny summary judgment for damages for this period for the reason that nowhere in the papers filed with the Court, and especially in the affidavit and brief filed in support of the Motion, is the quantum of net profit lost by the plaintiff as a result of defendant's conduct made definite and certain. Consequently there remains a genuine issue of material fact to be proved. Even if there was some doubt as to this material issue of fact, we would still be required to resolve it in favor of the non-moving party and deny that part of the Motion. But as we perceive this part of the case, it is clear that there exists a genuine fact issue which must be resolved by a trial or by its equivalent, i.e., by stipulation of the parties, approved by the Court.

In M & R Contractors and Builders v. Michael, 138 A.2d 350, our research led us to the following citations which we believe provide an excellent guide as to how to assess the damages in this type of case:

> In McCormick Damages, Sec. 164 (1935), it is stated that "where the owner—. . . renounces the contract before the builder has entered upon the work or preparation thereof, the builder recovers the loss of the expected profit, namely, the difference between the agreed price and what it would cost the builder to carry out his bargain."

In Page, Contracts, Sec. 3215 (2d ed. 1922), it is said: "If the party for whom the work is to be performed renounces the contract or otherwise prevents the contractor from performing, the measure of damages is said to be the contract price less the cost of completing the performance of such contract. . . . The fact that it is not possible to ascertain with absolute accuracy the cost of completing the contract does not prevent this measure of damages."

Also, in 2 Sedgwick, Damages, Sec. 614 (9th ed. 1912), it is said: "Where a contract price is fixed in the contract, this becomes the standard of value of the contract, the profit being the difference between the contract price and the cost or value of performance."

See also Professor Patterson's discussion of a contractor's damages in the article entitled "Builder's Measure of Recovery for Breach of Contract", 31 Colum. L. Rev. 1286 (1931), and Restatement, Contracts, Sec. 356 (1932), Damages for Breach of a Construction Contract, Subsection (2)(a), which states: ". . . if it is a total breach he [the builder] can get judgment for the entire contract price and compensation for unavoidable special harm that the defendant had reason to foresee when the contract was made, less installments already paid and the cost of completion that the builder can reasonably save by not completing the work." Id. pp. 355–356.

While the formula alludes to builders' contracts, we see no material difference between such contracts and that in the case sub judice as far as an appropriate formula for the computation of the measure of damages is concerned.

This brings us to the issue of the minimization of damages which was raised by the defendant in its First Set of Interrogatories propounded to plaintiff, dated October 31, 1986. This issue also, we believe, was fully addressed in the Michael case, supra, in the following language beginning on Page 358:

With respect to minimization of damages, the ordinary rule is that damages are not recoverable if the consequences of a breach are avoidable. In other words, a plaintiff is not entitled to a judgment for damages for a loss that he could have avoided by a reasonable effort without risk of additional loss or injury. Likewise, gains that he could have made by a reasonable effort, without risk of loss or injury, by reason of opportunities he would not have had but for the other party's

breach, are deductible from the amount he is otherwise entitled to recover. However, gains made by an injured party on other transactions after a breach should never be deducted from damages otherwise recoverable, unless such gains could not have been made had there been no breach. 5 Corbin, Contracts, Secs. 1039 and 1041. On the other hand, if a plaintiff could not have worked on another job or project unless he had been discharged from the performance of the defendant's contract, then the gains from the other employment or undertaking must be deducted from the plaintiff's damages. Essentially, the inquiry is whether the plaintiff's employment or undertaking was of a personal nature. However, a building contractor normally has more than one project in progress at the same time. If he has, then his contracts for services to be performed are not personal. Thus, Professor Patterson, who made a detailed study of building contracts, which he set forth in his article published in 31 Colum. L. Rev., supra, had this to say at p. 1306:

> The builder's gain from another contract which he took on immediately after the owner's repudiation will not be considered in reducing his recovery of full damages (including profits) for breach of contract. As an enterpriser, the builder may take on an indefinite number of contracts and make a profit on all of them.

Cases in which this problem was considered include Ross v. Columbus Mining Co., 1924, 204 Ky. 474, 264 S.W. 1071; Hollerbach & May Contract Co. v. Wilkins, 1908, 130 Ky. 51, 112 S.W. 1126; Olds v. Mapes-Reeves Construction Co., 1900, 177 Mass. 41, 58 N.E. 478; Sullivan v. McMillan, 1896, 37 Fla. 134, 19 So. 340; Graves v. Hunt, 1887, 44 Hun. 624, 8 N.Y. St. Rep. 308; and Nilson v. Morse, 1881, 52 Wis. 240, 9 N.W. 1, in which it was held that building contracts do not ordinarily require the rendition of personal services. Specifically, with regard to building contracts, Corbin states at note 36, Section 1094:

> . . . the owner is not entitled to deduct from the contract price any profits that the plaintiff may have made on other contracts obtained or performed by him after the repudiation by the owner of the contract sued on. . . . It would hardly ever be possible for the defendant to prove that but for his

repudiation the other contracts could not have been obtained or performed. This proof would be necessary in order to justify such a deduction.

In any event the burden of proving that losses could have been avoided by reasonable effort and expense is upon the party who broke the contract. Corbin, Contracts, Section 1039, supra. ██ Of course, if the owners in the instant case can show that their contract with M & R was such as to require the builder's entire time and attention so that their breach made it possible for the builder to undertake another project, then the actual gain made under the substituted contract must be considered in measuring the damages to which the builder is entitled. See De Moss v. Beryllium Corp., 1948, 358 Pa. 470, 58 A.2d 70. See also Restatement, Contracts, Sec. 346 (1932), Comment f.

See also Sections 347 and 350–353 of Restatement of Contracts, Second.

██ As in the Michael case, we find that the case before us was not one for personal services, but one in which the plaintiff performs several contracts simultaneously. Therefore, the fact that plaintiff possessed and performed other contracts during the period the defendant's contract was to be performed does not entitle the defendant to any deduction of profits made by plaintiff on any of such contracts from the amount of damages payable by defendant as a result of its breach of the contract. Since defendant has committed a total breach, the plaintiff is entitled to judgment for the entire contract price and compensation for unavoidable special harm that the defendant had reason to foresee when the contract was made, less only installments already paid and the cost of completion that plaintiff can reasonably save by not performing the work.

## III. ORDER

1. Partial Summary Judgment will therefore issue, that the defendant is liable to pay plaintiff such damages as it proves at trial it suffered as a result of defendant's refusal to permit plaintiff to perform the contract for the period May 30, 1985, through September 30, 1985.

2. Unless the parties resolve the issue of damages to their mutual satisfaction, this matter is scheduled to be tried on that issue on *July 14, 1988, at 11:00 a.m.*

## PARTIAL SUMMARY JUDGMENT

In accordance with the terms of its Memorandum Opinion and Order issued on even date herewith, it is hereby

ORDERED:

1. That plaintiff is granted Partial Summary Judgment on the question of liability only against the defendant for such net profit as plaintiff proves at trial it failed to realize as a direct result of defendant's failure to permit plaintiff to perform subject contract for the period May 30, 1985, through September 30, 1985; and

2. That this case is continued for trial on the issue of the amount of such damages on *July 14, 1988, at 11:00 a.m.*